# United States Court of Appeals

## For the First Circuit

No. 99-1628

INSTITUTO DE EDUCACION UNIVERSAL CORP.,
Plaintiff, Appellant,

v.

UNITED STATES DEPARTMENT OF EDUCATION, ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge]

Before

Torruella, Chief Judge,

Coffin, Senior Circuit Judge,

and Selya, Circuit Judge.

Roger Juan Maldonado, with whom Balber Pickard Battistoni
Maldonado & Van Der Tuin, PC and Frank D. Inserni were on brief,
for appellant.
Anthony A. Yang, Attorney, Appellate Staff, Civil Division,
United States Department of Justice, with whom David W. Ogden,
Acting Assistant Attorney General, Guillermo Gil, United States
Attorney, and Barbara C. Biddle, Attorney, Appellate Staff, were
on brief, for appellees.

April 12, 2000

**SELYA, <u>Circuit Judge</u>.** This procedural motley stems from the admittedly awkward efforts of plaintiff-appellant Instituto de Educacion Universal Corp. (the Institute) to secure judicial review of a final determination of the United States Department of Education (DOE) pursuant to the Administrative Procedure Act (the APA), 5 U.S.C. §§ 702-706. In the pages that follow, we summarize the strange series of events that led to the district court's dismissal of the action and explain why, in the interests of justice, we deem it appropriate to vacate the order of dismissal in part and remand for further proceedings.

## I. BACKGROUND

The Institute is a private, not-for-profit educational institution based in Puerto Rico. At the times pertinent hereto, it offered an array of post-secondary courses. Since 1984, its recruitment efforts have depended heavily on the availability of federal student financial assistance programs established under the aegis of Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070-1099c-2, and administered by DOE.

In 1994, DOE's Inspector General undertook an audit that resulted in three findings adverse to the Institute. The auditors concluded that the Institute had (1) overstated its "clock hours" of instruction; (2) requisitioned excessive student aid payments (and compounded the problem by using the

ill-gotten funds for unauthorized purposes); and (3) failed to refund grants received for pupils who never completed the programs to which the grants related. In due course, DOE took a series of steps, some corrective and some punitive. Among other things, it declared the Institute ineligible to participate in federal student aid programs, imposed a substantial fine, and, after the final audit determination and program review report were issued, instituted collection proceedings to recover $1,284,900 in "clock hours" overcharges, $756,864 in "excess" cash receipts, and $655,554 in unpaid refunds.

Asserting that DOE had acted arbitrarily, the Institute pursued its administrative remedies. On January 24, 1997, an administrative law judge (ALJ) reversed the "clock hours" finding but affirmed several other agency determinations (e.g., the "excess cash" and "unpaid refunds" findings, and the decision to debar the Institute from participation in federal student aid programs). Both sides appealed to the Secretary of Education. On October 28, 1997, the Secretary affirmed the ALJ's decision in part but reinstated the "clock hours" finding and vacated the debarment decision.

At this point in time, the Institute was without counsel. Accordingly, Angel Ruiz Rivera (Ruiz), the Institute's

founder and president, purporting to act both on the Institute's behalf and to his own behoof, filed a notice of appeal in this court, asking that we review the Secretary's determination. The notice of appeal was docketed on March 6, 1998, well within the six-year period allowed for seeking judicial review of the Secretary's final orders. See 28 U.S.C. § 2401(a); see also Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997) (holding that six-year limitation period contained in section 2401(a) applies in respect to actions seeking judicial review of final agency determinations); Wind River Mining Corp. v. United States, 946 F.2d 710, 713 (9th Cir. 1991) (same). Unfortunately, Ruiz chose the wrong forum; the district courts, rather than the courts of appeals, have original jurisdiction over actions for judicial review of the Secretary's final determinations. See 5 U.S.C. § 703. At any rate, the matter lay fallow until July 24, 1998, when we issued an order that interpreted the notice of appeal as an attempt to "seek review . . . of a final decision of the Department of Education," and transferred it to the district court. See 28 U.S.C. § 1631 (authorizing inter-court transfer of misfiled pleadings).

Because the transfer process was plagued by lost documents and similar glitches (attributable to the courts involved, not to the parties), the case was not docketed in the

district court until October 29, 1998.  Following yet another procedural contretemps (the facts of which need not concern us), the Institute, still unrepresented, filed a document over Ruiz's signature entitled "Motion for Temporary Restraining Order." The title was misleading; although not a model of clarity, this submission, fairly read, sought not only an injunction but also judicial review of the final decision of the Secretary.[1]  Indeed, the request for relief included a prayer that DOE be commanded to produce "its entire administrative record [vis-à-vis the Institute] in order for this appeal of the final agency decision to be able to commence."  (Emphasis supplied).

The response to this motion served further to confound an already muddled situation.  DOE complained that the Institute had failed to file a complaint, and then shifted the focus to one of the Institute's requests for injunctive relief.  This request stemmed from an assertion that DOE had refused to furnish another educational institution that wished to lease a building from the Institute with an assurance that, if it consummated the lease, it would not inherit the Institute's

---

[1]By way of illustration, the submission stated in relevant part that "[the Institute] is the appellant in this appeal of the U.S.D.E. Secretary's final decision in the administrative case of that agency against [the Institute]."  It then discussed the "clock hours" finding and complained that the DOE was "openly violating" those provisions of the Administrative Procedure Act that afforded the Institute "a right of review."

Title IV liabilities. DOE self-servingly characterized the lease controversy as the "real issue" in the case and contended that, because it recently had provided suitable assurances to the prospective lessee, the issue was moot. DOE then pounced upon an isolated use of the phrase "in the alternative" in the Institute's papers — to be precise, the Institute had used the phrase once in a thirty-six page submission — and argued that the court could ignore the remainder of the Institute's claims (including the request for judicial review of the Secretary's final decision) because those claims had been proffered only "in the alternative."

Eschewing oral argument, the district court issued a terse, three-page order in which it dismissed the action, rather than merely denying the request for a temporary restraining order, on the ground that the relief sought by the Institute already had been obtained. See Instituto de Educacion Universal v. United States Dep't of Educ., No. 98-2225 (RLA), order at 2 (D.P.R. Feb. 19, 1998). In a footnote, the court explained that "[s]ince the relief sought in the motion for injunctive relief has been provided by defendants, the other claims, pled in the alternative by plaintiffs in their motion, are also rendered MOOT by the dismissal of this action for lack of controversy." Id. at 3 n.4.

Apparently unaware that judgment had entered, the Institute filed a "Motion Urging Jurisdiction" on February 26, 1999.  The contents of this filing clarified any lingering uncertainty and made it patent that the Institute's primary goal was to obtain judicial review of the Secretary's final determination.[2]  The district court treated this motion as a motion for reconsideration and denied it summarily.

This appeal ensued.  For argument purposes, we consolidated it with a second appeal (No. 99-1398) involving essentially the same cast of characters.  We have elected, however, to decide the two appeals separately.  This is the first of the two opinions.

## II.  ANALYSIS

As a threshold matter, we confront a jurisdictional barrier.  Because the appellants' previous counsel had withdrawn from the case, only Ruiz (a non-lawyer) signed the notice of

---

[2]The motion stated, inter alia, that "[i]t is our humble understanding that . . . this is the forum where the final agency decision . . . ought to be judicially reviewed," and "begg[ed]" the court to hold a conference "for the coordination of this judicial review of the final agency decision."  The Institute then inquired rhetorically:  "If this case is not the appeal of judicial review of the [Secretary's] final decision, . . . then what is it?"  It also asked:  "What do we have to do in order to have this honorable court perform its judicial review of the final agency decision?"

appeal. DOE argues that this circumstance deprives us of appellate jurisdiction.

It is a close question as to whether a notice of appeal signed by a corporate officer has force with respect to the corporation. On reflection, however, we answer that question affirmatively. Corporations, unlike natural persons, can act only through agents. Moreover, appeal periods are notoriously brief and, if we were to adopt the Secretary's view, a corporate litigant whose counsel dies, becomes disabled, or withdraws at an inopportune time would be powerless to perfect an appeal. While it is true that a non-lawyer may not represent a corporation in ongoing proceedings, see In re Las Colinas Dev. Corp., 585 F.2d 7, 13 (1st Cir. 1978), we believe that a valid distinction can be drawn between ongoing legal representation and the essentially ministerial action involved in the filing of a notice of appeal. Thus, we hold that a corporate officer may sign and file a notice of appeal on behalf of the corporation, as long as the corporation then promptly retains counsel to take up the cudgels and prosecute the appeal. Accord Bigelow v. Brady, 179 F.3d 1164, 1165-66 (9th Cir. 1999) ("We fail to see any compelling reason to refuse to recognize a corporation's notice of appeal, signed and filed by a corporate officer, so long as a lawyer promptly thereafter enters a formal appearance

-9-

on behalf of the corporation and undertakes the representation."); K.M.A., Inc. v. GMAC, 652 F.2d 398, 399 (5th Cir. 1981) (similar). That condition is satisfied here.

Having cleared this jurisdictional hurdle, we review the order of dismissal de novo. See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The district court was, of course, correct in holding that the lease controversy had become moot. But we think that the record adequately (though inartfully) raised the separate issue of judicial review of the Secretary's final decision. See 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.") That issue is live and unresolved. Thus, unless the order of dismissal can be justified on some other ground, it cannot stand.

DOE proclaims that the Institute's failure to file a complaint qua complaint sounded the death knell for its suit. A civil action customarily is instituted by the filing of a complaint, see Fed. R. Civ. P. 3, and DOE asseverates that the motion for temporary restraining order is the only document of record here that could have been construed as a complaint. That being so, its thesis runs, the district court had a perfect right to treat the motion as the Institute's complaint and to

construe the phrase "in the alternative" as erasing any need to consider other redress (including judicial review of administrative action) once the Institute had achieved the relief requested in regard to the lease controversy.

We are troubled by this rigid approach to the construction of pleadings. The rule that every civil action is initiated by the filing of a complaint historically has been relaxed in actions that originate elsewhere and are then transferred to a federal district court (e.g., by removal from a state court). See Fed. R. Civ. P. 81(c) (eliminating the need for repleading unless the transferee court so orders). In such a situation, the district court need not try to fashion a silk purse from a sow's ear by treating a paper that obviously was intended to serve a different purpose as a complaint, but instead may direct the filing of a complaint. We believe that, given the peculiar circumstances of this case, the district court should have charted such a course before terminating the entire action (say, by issuing a show-cause order or otherwise advising the Institute that its case was at risk). Its failure to do so constituted an abuse of discretion. This is especially true because the principal purpose of the proceeding — judicial review of the final administrative determination — was clearly stated both in the Institute's original notice of appeal and in

-11-

our transfer order. These statements, combined with the repeated references to judicial review that popped up like a rampant case of impetigo throughout the motion papers, should have put the lower court on notice that the Institute's main goal was to seek judicial review of the adverse administrative decision.[3]

We add, moreover, that even assuming, contrary to our impression, that the district court's decision to construe the motion for temporary restraining order as the complaint was within its discretion, its decision to dismiss the entire action based on a non-lawyer's isolated use of the phrase "in the alternative" was not. The Supreme Court has long held that complaints drafted by non-lawyers are to be construed with some liberality. See Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Lema v. United States, 987 F.2d 48, 54 n.5 (1st Cir. 1993) ("Given [plaintiff's] pro se status, the reference by attachment, though perhaps technically deficient, was sufficient to alert the court and the government to the

---

[3]An additional reason for circumspection is that the district court accepted (and ruled on) papers filed by Ruiz, a non-lawyer, on behalf of the Institute. Had the district court followed standard practice and required the Institute to secure counsel at that point, the interpretative difficulties that ensued might well have been avoided.

specific basis of [plaintiff's] claims."). This tenet rests on the sober reality that, "[p]resumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation and internal quotation marks omitted). Accordingly, the lower court should not have dismissed this action, on essentially technical grounds, without affording the Institute some opportunity to replead.[4] See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1217, at 176-77 (2d ed. 1990).

If more were needed — and we doubt that it is — the aforementioned motion for reconsideration demonstrated with unmistakable clarity the Institute's desire to secure judicial review of the Secretary's final determination, regardless of whether the lease controversy was resolved. See supra note 2. Although trial courts have substantial discretion in dealing

---

[4]We add two caveats. First, we note that 28 U.S.C. § 1915(e)(2)(B) does not apply here. Second, we do not mean to intimate that pro se parties are excused from compliance with procedural rules (they are not, see Eagle Eye Fishing Corp. v. United States Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)), nor to require district courts invariably to notify pro se parties that their cases are open to dismissal. We hold only that when, as now, a pleading drafted by a pro se party appears non-frivolous on its face, the court ought not automatically to resolve material ambiguities against the pleader.

with motions for reconsideration, that discretion is not unbounded. See Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 528 (1st Cir. 1991). Thus, a refusal to reconsider may be overturned if the record makes manifest "that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Id. at 528-29.

So it is here. The district court, apparently influenced both by the ambiguity contained in the motion for a temporary restraining order and by DOE's self-serving argument, erroneously concluded that the abatement of the lease controversy accorded the Institute all the relief that it sought. The motion for reconsideration, however, made it clear that the court had misinterpreted an admittedly prolix, hard-to-read pro se pleading. Under those circumstances, the interests of justice required that the court reconsider and modify its earlier order. Cf. id. at 529 (holding that, when fee-seekers' submission on motion for reconsideration corrected deficiencies in original fee application, "[t]here was insufficient reason to deny reconsideration merely because the movants had erred the first time around").

## III. CONCLUSION

We need go no further. For the reasons stated, we affirm the district court's order with respect to the denial of the motion for a temporary restraining order, but vacate it insofar as it purposes to dismiss the entire action. The matter is remanded to the district court with instructions that the Institute be given an opportunity to file a complaint seeking judicial review of the Secretary's final administrative determination.

**<u>Affirmed in part and vacated in part</u>**. **<u>No costs</u>**.