Christian MUMME, Plaintiff

v.

UNITED STATES DEPARTMENT OF LABOR, et al., Defendants

No. 00–CV–96–B–S.

United States District Court, D. Maine.

July 17, 2001.

Christian F. Mumme, Eastport, ME, for Pro se.

James M. Moore, U.S. Attorney's Office, Bangor, ME, for Defendants.

### ORDER RECONSIDERING PRIOR ORDER

SINGAL, District Judge.

Before the Court are Defendants' Motion for Reconsideration (Docket # 29) and Plaintiff's Motion for Reconsideration (Docket # 30), both challenging the Order Regarding Defendants' Motion to Dismiss (Docket # 27). In its prior Order, the Court converted Defendants' Second Motion to Dismiss (Docket # 23) into a summary judgment motion, which the Court granted in part and denied in part. In the present cross motions, Plaintiff argues that entering partial summary judgment against one of his claims was inappropriate, and Defendants argue that the Court

overlooked one of their arguments and that a complete summary judgment against Plaintiff's claims is warranted. Also before the Court is Plaintiff's Motion to Amend Complaint (Docket # 39). For the reasons discussed below, the Court GRANTS Defendants' Motion for Reconsideration, DENIES Plaintiff's Motion for Reconsideration, and DENIES Plaintiff's Motion to Amend Complaint.

### I. STANDARD OF REVIEW

■ Because partial summary judgment is an interlocutory order that does not completely dispose of a case, the Court has wide discretion to reconsider it. *See, e.g., Instituto de Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 24 (1st Cir.2000) (district courts generally have broad discretion when considering a motion for reconsideration); *Rivera–Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 748 n. 3 (1st Cir.1995) (district court may revisit partial summary judgment orders). When reconsidering the prior Order, the Court continues to apply the summary judgment standard.

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). When considering Defendants' arguments that Plaintiff has failed to state a claim upon which relief can be based, the Court views the factual record pursuant to this summary judgment standard.

## II. BACKGROUND

The Court already has outlined the majority of the factual elements of this case in *Mumme v. United States,* No. 00–CV–103–B, 2001 WL 80084, at *1–*2 (D.Me. Jan. 29, 2001). Plaintiff Christian Mumme was an inspector for the United States Department of Treasury Customs Service. In 1986, Mumme suffered an employment-related back injury, which rendered him permanently disabled and unable to work. Since then, he has been receiving disability and medical benefits from the Government.

In 1995, the Department of Labor allegedly began to investigate Mumme based on a suspicion that he no longer was disabled, but rather was malingering and defrauding the United States. Mumme argues that while investigating him, the Department of Labor compiled an erroneous record pertaining to him and his activities. Moreover, Mumme claims that the Department of Labor has violated the Privacy Act by withholding portions of that record from him and by sharing certain portions of it with Dr. John Bradford, who performed a medical examination of Plaintiff and determined that Mumme was no longer disabled.

Central to Mumme's claims, he avers that the Government has fabricated false evidence showing him performing strenuous construction work inconsistent with a debilitating back injury. Specifically, Mumme alleges that on the morning of November 9, 1995, a pair of federal agents surveilled two persons, Ronald Sullivan and another man, who were working on Mumme's property. Mumme had hired the two men to build an addition to his house. According to sworn affidavits by Mr. Mumme, his wife Gail Mumme, and Sullivan, Mr. Mumme was away from his home that morning until noon. One of Mumme's neighbors, Laura Snyder, testified in an affidavit that she watched two suspicious men in a dark blue automobile videotaping the men working in Mumme's yard, and that the two mysterious observers departed just before noon.

According to Mumme, the two unknown men were federal agents operating in conjunction with the Department of Labor. Mumme came to this conclusion after meeting with Dr. John Bradford, who examined Mumme on behalf of the Government on March 23, 1998. Prior to Mumme's appointment with the doctor, the Department of Labor allegedly sent Bradford certain materials regarding Mumme's physical condition. Among these materials, the Government allegedly transmitted to Bradford its report on Mumme, a suggested list of medical findings and a videotape recorded by the Government agents during the morning of November 9, 1995.

According to Plaintiff's speculative averments, the Department of Labor sent the tape to Dr. Bradford and told him that it showed Mr. Mumme doing construction work in his yard, in an effort to induce Dr. Bradford to believe that Plaintiff was engaging in strenuous activity inconsistent with his claims that he suffers from a permanent disability. Plaintiff implies that Defendants acted with the hope that Dr. Bradford would view the video and mistake the persons featured in that video for Mr. Mumme. After examining Plaintiff, Dr. Bradford drafted a medical report, which he later submitted to the Department of Labor. In the medical report, Dr. Bradford relies on the contents of the videotape in making his determination that Plaintiff is medically fit to work. (Medical Report dated March 25, 1998, at 5 (Docket # 38, Attach.) ("unless the contradictory evidence on the video can be reasonably explained, then I see no reason why Mr.

Mumme cannot undertake the position of customs inspector.").)

Once Mumme became aware of the investigation, he wrote several letters to the Department asking for a complete copy of the agency's records related to him, including the disputed videotape. From May to December of 1998, Plaintiff claims to have sent eight letters to several officials in the Department of Labor. He sent seven letters to the Boston office of the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). One of the eight letters, dated August 27, 1998, was sent to the Department of Labor's Office of Inspector General ("OIG") in Washington, D.C. The OWCP and the OIG are distinct components of the Department of Labor. The OWCP administers workers' compensation benefits, while the OIG investigates potential cases of fraud. From the various filings, the Court understands that the OWCP maintained a "claim" file regarding Mumme, while the OIG maintained an "investigation" file of Mumme.

Plaintiff claims that the eight letters constituted requests for information under the Privacy Act, 5 U.S.C. § 552a. The Government claims that these letters were not requests for information, but that they were correspondence between Mumme and the agency pertaining to his disability claims. Several of these letters, however, feature broad requests for all information regarding the Department's evaluation of Mumme's disability status. The letter to the OIG specifically asked for "one unedited copy of the 11/9/95 video." (Letter from Chris Mumme to OIG, Aug. 27, 1998 (Docket # 38, Attach.).)

In response to Mumme's letter to the OIG dated August 27, 1998, OIG Disclosure Officer Pamela Davis sent a letter to Mumme on December 14, 1998. In the December 14th letter, Davis stated that the OIG was refusing Mumme's request on the ground that disclosure would interfere with law enforcement proceedings or pending investigations. Mumme claims that he appealed that agency action by sending two letters, dated January 16, 1999 and January 27, 1999, to the Solicitor of Labor in Washington, D.C.[1] The Department of Labor acknowledges the January 16th appeal, but maintains that there was no appeal letter dated January 27th. The Department of Labor claims that it responded to the January 16th appeal by partially reversing the OIG's prior decision and releasing to Mumme only the non-privileged portions of its investigation file on August 17, 1999.

Peter Galvin, an official in the Labor Department, stated in a sworn affidavit that the OWCP has given Mumme everything in its claim file, i.e., all information that the OWCP possessed regarding him. Plaintiff has not disputed this allegation. The OIG, however, is a slightly different story. Unsatisfied with the redacted file sent to him on August 17, 1999, Plaintiff complains to the Court that the OIG improperly has withheld information from him, in particular the videotape allegedly made on November 9, 1995 by federal agents. The Department of Labor asserts that Mumme never appealed the agency's decision to submit to him a redacted version of his investigation file on August 17, 1999. In response, Mumme argues that he never received a "response letter" dated August 17, 1999. (*See* Pl. Resp. Br. at 2, ¶ 4 (Docket # 25).)

Apparently, sometime in the last few months Mumme somehow obtained a copy of the notorious videotape. Consequently, Defendants argue that Mumme's docu-

---

1. Although Davis's letter is part of the record, Mumme's alleged appeals are not.

ment request claims are now moot because he already has received the videotape "from another agency of the Federal government." (Defs. Reply Br. at 3 (Docket # 44).) In his recent filings, Mumme discusses the contents of this videotape, implicitly acknowledging that he has had access to the tape. Also, the record suggests that the Government continues to pay Plaintiff disability benefits and to cover his medical expenses.

## III. DISCUSSION

Plaintiff has brought suit alleging that the Department of Labor and its Secretary have violated the Privacy Act, 5 U.S.C. § 552a, in numerous ways: by failing to disclose certain records to him (Counts I and III), by failing to maintain certain records concerning Plaintiff in an accurate, timely and complete manner (Count II), by not permitting Plaintiff to request that the agency amend its records pertaining to Plaintiff (Count IV), by failing to collect information directly from Plaintiff when compiling its files about him (Count V), by wrongfully disclosing portions of his records to a third party, Dr. Bradford (Count VI), and by failing to implement appropriate safeguards to insure the security and confidentiality of the agency's records (Count VII). (*See* Compl. (Docket # 1); Second Am. Compl. (Docket # 18).) Also, Plaintiff claims that Defendants violated his Fifth Amendment rights by singling him out for mistreatment (Count VIII). (*See* Compl. ¶ 8 (Docket # 1).) In addition, Plaintiff alleges that the Department of Labor committed fraud against him by falsely claiming that it videotaped him performing strenuous work inconsis-

tent with a debilitating back injury. (*See* Am. Compl. (Docket # 2).) [2]

### A. Clarifying the Identities of the Defendants

Dispersed within his filings, Plaintiff also accuses the United States Customs Service and the United States of America of violating the Privacy Act. In the prior Order, the Court clarified that neither the Customs Service nor the United States are proper defendants for a Privacy Act claim. (*See* Order at 4 n. 5 (Docket # 27).) In his present Motion for Reconsideration, Plaintiff contends that the Customs Service and the United States should be joined as defendants in this action.

■ Regarding the Customs Service, Plaintiff makes only vague and conclusory allegations against the agency. Although he hints at joining the Customs Service as a defendant (*see* Pl. Am. Mot. to Amend Scheduling Order (Docket # 6)), Plaintiff has not moved formally to join the Customs Service as a party. Moreover, adding the Customs Service as a defendant at this stage in the litigation would be highly prejudicial to the Customs Service and the United States, especially in light of the fact that Plaintiff already has amended the Complaint twice and he has another Motion to Amend Complaint (Docket # 39) presently pending (in which Plaintiff makes no mention of the Customs Service). In addition, the Scheduling Order (Docket # 4) set the deadline for joinder of parties as August 18, 2000. All things considered, it would be entirely inappropriate to permit Plaintiff to join the Customs Service as a defendant.

---

**2.** Plaintiff makes no mention of either his Fifth Amendment claim or fraud claim in the Second Amended Complaint. (*See* Second Am. Compl. (Docket # 18).) In the Second Amended Complaint, however, Plaintiff specifically asks the Court to treat the Second

Amended Complaint "in conjunction with Plaintiff's previous amendment and original pleadings." *Id.* at 2. Because the Court reads pro se pleadings liberally, the Court recognizes the Fifth Amendment and fraud claims.

■ Plaintiff states that "this Court previously understood and accepted that the United States Government replaced DOL as the Defendant in this matter. If that is so, the Plaintiff believes U.S. Customs is already included; as being part of the U.S. Government." (Pl. Mot. for Recons. ¶ 3 (Docket # 30).) The Court assumes that Plaintiff makes reference to one of Plaintiff's other lawsuits against the Government, *Mumme v. United States*, No. 00–CV–103–B, 2001 WL 80084, at *1 n. 1, *5 (D.Me. Jan. 29, 2001). In that separate lawsuit, the Court clarified that for Plaintiff's tort claims against the Government, the United States was the appropriate defendant, while regarding his *Bivens* claims, he could proceed against the Secretary of Labor. *See id.* That distinct lawsuit, of course, has no bearing on the instant matter. Moreover, as discussed in the prior Order (*see* Order at 4 n. 5 (Docket # 27)), a claimant bringing a Privacy Act claim must bring suit against a particular agency, not the entire United States. *See* 5 U.S.C. § 552a(g)(1). Thus, the United States cannot be a defendant pursuant to Plaintiff's Privacy Act claims. Therefore, the Court will not alter its clarification that, regarding Plaintiff's Privacy Act claims, the only valid defendant is the Department of Labor.

■ As to Plaintiff's common law fraud claim, however, the United States is the only appropriate defendant, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671—2680. The Court treats this claim separately below. (*See infra*, pp. 23–24.) Regarding Count VIII, Plaintiff's Fifth Amendment *Bivens* claim, the Secretary of Labor is the only proper defendant. *See, e.g., Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000). Simi-larly, the Court treats Count VIII separately below. (*See infra*, pp. 175–76.)

**B. Counts I & III**

Counts I and III of Plaintiff's Complaint allege that the Department of Labor has failed to disclose certain documents to Plaintiff in violation of the Privacy Act.

**1. Revisiting the Exhaustion Argument**

■■ Defendants argue that Plaintiff's Privacy Act claims fail because he did not exhaust his administrative remedies. The Privacy Act does not expressly institute administrative requirements prior to filing a lawsuit. Thus, for plaintiffs seeking relief pursuant to the Privacy Act, the exhaustion requirement is jurisprudential rather than jurisdictional. *See, e.g., Taylor v. United States Treasury Dep't*, 127 F.3d 470, 475–77 (5th Cir.1997). Before a litigant may file a lawsuit against a federal agency pursuant to the Privacy Act, to exhaust his administrative remedies he first must follow the procedures adopted by that agency.

The first step for a claimant is that he or she must make a request to the relevant agency asking for the particular relief. The Department of Labor has issued regulations instructing claimants as to how they must fashion their Privacy Act requests. *See* 29 C.F.R. § 71.2. To gain access to information about one self through the mail, a claimant first must send the relevant Department component a request with "an example of his signature, which shall be notarized, or signed as an unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. 1746." *Id.* § 71.2(d)(1).[3] As well, "[b]oth the envelope and the request itself should be

---

3. The requirements differ for a claimant who goes to the Department of Labor's offices in person to request information.

marked: 'Privacy Act Request.'" *Id.* § 71.2(a).

In his Complaint, Plaintiff alleges that between May and December of 1998 he sent eight letters to the Department of Labor asking for information regarding the Government's investigation of him. By sworn affidavit, Defendants maintain that the letters "were not Privacy Act requests but correspondence between Mr. Mumme and the Claims Examiners processing his disability claims." (Peter Galvin Aff. ¶ 3 (Docket # 24).) Six of these eight letters are part of the record. (*See* Docket # 38, Attach.)

Upon review of the six letters on the record, the Court agrees that not one of them constitutes a request made pursuant to the Privacy Act and the Department of Labor's regulations. None of Mumme's letters are notarized or were signed as an unsworn declaration under penalty of perjury. *See* 29 C.F.R. § 71.2(d)(1). None of the six letters state "Privacy Act Request."

The record, however, does not include the other two letters, allegedly mailed on July 11, 1998 and December 29, 1998. Mr. Galvin, speaking on behalf of the Department of Labor, avers by sworn affidavit that neither of the two letters constituted a Privacy Act request. Such a statement, however, is not a factual averment but a legal conclusion, which the Court need not accept. *See, e.g., Hamlin v. Kennebec County Sheriff's Dep't,* 728 F.Supp. 804, 806 (D.Me.1990). Plaintiff maintains, albeit in a memorandum rather than in a sworn affidavit, that the two letters were valid Privacy Act requests. (Pl. Resp. to Defs. Mot. for Recons. ¶ 2 & 3 (Docket # 37).) Viewing the facts in the light most favorable to Plaintiff, the Court will accept for the moment that the two letters were

notarized and included the other criteria essential to a Privacy Act request.

In any event, even though the Government argues that none of the letters constituted a valid Privacy Act request, the Government responded to Plaintiff's August 27, 1998 letter with a letter dated December 14, 1998 drafted by Ms. Davis, an OIG official. In that letter, Ms. Davis stated that the Department of Labor was refusing his request on the ground that disclosing the documents would interfere with law enforcement proceedings or pending investigations, which may be exempted pursuant to 5 U.S.C. §§ 552(b)(7)(A) and 552a(j)(2).

Subsequently, Plaintiff allegedly appealed Ms. Davis's refusal letter by sending two letters to the Department of Labor on January 16, 1999 and January 27, 1999. The Department of Labor contends that the January 16th letter was the only valid appeal of an agency decision.[4] In response to the January 16th letter, the Department of Labor avers by affidavit that it sent to Plaintiff the non-privileged portions of its records regarding him. Plaintiff argues that the Government did not comply with his request. The Government responds that because Plaintiff never appealed the Government's decision to send him only a redacted version of his file, Plaintiff has failed to exhaust his administrative remedies.

With its Second Motion to Dismiss, the Government included a Statement of Facts reiterating the representations made by Mr. Galvin, who stated in a sworn affidavit that the Government sent Plaintiff all of the non-privileged portions of the Department of Labor's files regarding him on August 17, 1999. Plaintiff, acting pro se, responded by stating in a legal brief, not in a sworn affidavit, that he never received a

---

4. Defendants do make clear whether they did not receive the January 27th letter, or whether they received the letter but that they do not consider it to constitute a Privacy Act appeal.

"response letter" dated August 17, 1999. (*See* Pl. Resp. Br. ¶ 4 (Docket # 25).) Because Plaintiff rebutted Mr. Galvin's factual averment in an unsworn manner, Defendants argue that the Court should not give credence to Plaintiff's unsworn statement that he did not receive a response letter from Ms. Davis dated August 17, 1999.

The Court acknowledges that in its prior Order, the Court converted the Government's 12(b)(6) Motion to Dismiss into a Rule 56 motion for summary judgment. From this, Defendants argue that unless Plaintiff responds to Defendants' sworn averments with sworn averments of his own, Local Rule 56 mandates that the Court disregard Plaintiff's unsworn allegations. Indeed, the local rule states that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Local Rule 56(e).

Essentially, the Government is asking the Court to strictly apply formalistic procedural rules against Plaintiff. Procedural rules, however, cut both ways. The Court notes that the Government also did not comply with Local Rule 56(e), which states that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." The Government's Statement of Facts cites Galvin's affidavit as a whole, without citations to specific pages or paragraphs.

▆▆▆▆ Because the Court sua sponte converted Defendants' Second Motion to Dismiss into a summary judgment motion, and because neither party is wholly in compliance with Local Rule 56(e), the Court declines to enforce the local rules in such a technical manner against Plaintiff, especially when Plaintiff is acting pro se. Moreover, Plaintiff's averment—that he did not receive a response letter dated

August 17, 1999—is not necessarily rebutted by Mr. Galvin's allegation that the Government sent a redacted file to Plaintiff on August 17th. When a component of the Department of Labor denies or grants only in part a request for information, the component must inform the requester in writing. *See* 29 C.F.R. § 71.4. On the current record, it is not clear that Mr. Galvin's response to Plaintiff's January 16th appeal letter included any written explanation of the partial grant of Plaintiff's appeal as required by the regulation. *See id.* Thus, for summary judgment purposes, the Court accepts that Plaintiff never received a response letter pursuant to 29 C.F.R. § 71.4. Rather, on the present record, construed in the light most favorable to Plaintiff, it appears that he received only the redacted investigation file. The purpose of a response letter is to inform the requester of the reasons behind a denial or partial denial, and to inform the requester that he or she has a right of appeal. Because the Court finds that Plaintiff never received a response letter, the Court draws the reasonable inference that Plaintiff was unaware that he could appeal the agency's partial disclosure, thereby foreclosing Defendants' argument of exhaustion.

### 2. Mootness

That being said, Mr. Galvin also averred by affidavit that, in 1998, the OWCP gave Plaintiff a copy of its entire OWCP file. Plaintiff does not dispute this. Therefore, Plaintiff's claims regarding the seven letters that he sent to the OWCP are moot. Plaintiff, however, does respond to Mr. Galvin's statement by pointing out that Mr. Galvin did not "say that Plaintiff's file contains all the information *DOL* possesses on the Plaintiff." (Pl. Resp. Br. ¶ 8 (Docket # 25) (emphasis in original).)

The burden, however, is on Plaintiff to petition a specific component of the Department of Labor for information. *See, e.g.,* 29 C.F.R. § 71.2(a). Plaintiff requested information from only the OWCP and the OIG. Because Plaintiff does not dispute that the OWCP has disclosed all information relevant to Plaintiff, the Court now considers what information the OIG possesses.

Defendants argue that the OIG has conveyed to Plaintiff all non-privileged information that it has regarding him. The "privilege" relied on by the Government are two distinct exemptions from disclosure for investigatory purposes, codified in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(A), and in regulations adopted pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2). Plaintiff argues vociferously that it is entirely improper for the Government to deny a Privacy Act request based on a FOIA exemption.

▇▇▇▇ When Ms. Davis refused Plaintiff's request, however, she cited not only FOIA, but also section 552a(j)(2), which is part of the Privacy Act. Her letter refers to 5 U.S.C. § 552a(j)(2), which authorizes the Secretary of Labor to promulgate regulations establishing exemptions from disclosures of certain types of documents. Pursuant to the Privacy Act, the implementing regulation exempts information held by the OIG, the disclosure of which would impede law enforcement investigations. *See* 29 C.F.R. § 71.50.[5] Plaintiff has not rebutted the Government's reliance on this exemption, which unquestionably applies to Privacy Act requests.

Moreover, the only document that Plaintiff specified had been left out of the OIG's disclosure was the videotape. *See* 29 C.F.R. § 71.2(b) ("A request for access to records must describe the records sought in sufficient detail. . . ."). Other than the videotape, Plaintiff does not specifically identify any other materials that he would like the OIG to disclose. Mr. Galvin, however, states in an affidavit that "the Labor Department does not possess a surveillance video of plaintiff." (Galvin Aff. ¶ 5 (Docket # 24).) Furthermore, Plaintiff has come to possess the videotape. Thus, Plaintiff's request for the videotape is moot. Because Plaintiff has received a copy of his entire OWCP file, because he has not disputed the OIG's reliance on the Privacy Act exemption, because he has had access to the videotape, and because he has not specified any other documents that he would like to receive, Plaintiff apparently has obtained all that he can from the Department of Labor, rendering moot his claims that Defendants failed to disclose information to him.

### C. Count II

▇▇▇▇ Count II of the Complaint claims that Defendants failed to maintain certain records concerning Plaintiff in an accurate, timely and complete manner in violation of the Privacy Act. Plaintiff initiated this lawsuit by filing a cursory Complaint featuring little more than conclusory accusations. (*See* Compl. (Docket # 1).) The Magistrate Judge ordered Plaintiff to file an amended complaint elaborating on his eight counts. (*See* Order to Show Cause (Docket # 16).) To comply, Plaintiff filed the Second Amended Complaint, in which he added nothing of substance to Count II. Thus, the Court finds that Count II fails to meet the notice requirements of Rule 8(a)(1). *See, e.g., Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80

---

**5.** Not only does 29 C.F.R. § 71.50 exempt *information collected for criminal investigations, but also* 5 U.S.C. § 552a(d)(5) exempts from disclosure information collected in reasonable anticipation of a civil action or proceeding.

(1957).[6] Moreover, by not proffering sufficient facts to support this count, Plaintiff has not met the standard of Rule 56. Therefore, the Court finds that Count II fails.

### D. Count IV

■ In the Second Amended Complaint, Plaintiff explains that because Defendants allegedly have failed to disclose all information that they possess regarding him, they constructively have prevented him from being able to request that the agency amend its records pertaining to him. Such a theory, although innovative, does not support a cause of action pursuant to the Privacy Act. The Privacy Act authorizes a private cause of action against a federal agency for: refusing to amend an individual's record, refusing to comply with an individual's request for information, failing to maintain records accurately and completely, or otherwise failing to comply with the Privacy Act in such a way that it causes the claimant an adverse effect. *See* 5 U.S.C. § 552a(g)(1). Moreover, Plaintiff's argument relies upon the premise that the Government has failed to disclose information, as alleged in Counts I and III. The Court, however, already has found that Counts I and III fail because the claims are moot or otherwise fail to state a claim upon which relief can be granted. The Court similarly finds that Count IV fails to state a claim upon which relief may be granted.

### E. Count V

■ The Privacy Act states that each federal agency must "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2). Plaintiff may bring suit against the Department of Labor for violating this section pursuant to 5 U.S.C. § 552a(g)(1)(D), which creates a cause of action if an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."

■ Plaintiff, however, has made no allegations supporting his claim that Defendants failed to collect information to the greatest extent practicable directly from the subject individual. He argues that because no federal agents directly asked him any questions, it must follow that the Department of Labor has violated section 552a(e)(2). When conducting a criminal investigation of an individual, however, it may not be practicable for the investigating officers to collect information via direct questioning of the individual. *See, e.g., Cardamone v. Cohen,* 241 F.3d 520, 528 (6th Cir.2001). In support of Count V, Plaintiff cites a letter written by Ms. Davis on June 23, 2000. The record, however, does not include a letter written by Ms. Davis dated June 23, 2000. Perhaps Plaintiff meant to reference the December 14, 1998 letter written by Ms. Davis. The Court, however, finds the December 14, 1998 letter to be irrelevant to Count V. (*See* Letter by Pamela Davis to Chris

---

**6.** Specifically, Count II of the original Complaint states in whole. "In addition, the Agency failed to maintain certain records, concerning claimant/plaintiff, in an accurate, timely, and complete manner; in violation of the Privacy Act." (Compl. ¶ 2 (Docket # 1).) Plaintiff says nothing regarding Count II in the Amended Complaint. In the Second Amended Complaint, all that Plaintiff states with regard to Count II is, "As in Count I." (Second Am. Compl. ¶ 2 (Docket # 18).) As discussed above, Count I charges the Government with wrongly refusing Plaintiff's requests for information, and has nothing to do with allegedly maintaining inaccurate records.

Mumme dated Dec. 14, 1998 (Docket # 25, Attach.).) Furthermore, Plaintiff has offered no arguments to demonstrate that by collecting information via avenues other than directly from Plaintiff himself, the agency has caused him an adverse effect. *See* 5 U.S.C. § 552(g)(1)(D). Thus, there are no genuine issues of material fact regarding Count V, and Defendants are entitled to judgment as a matter of law.

### F. Count VI

██ Count VI alleges that Defendants made a wrongful disclosure of information to a third party. The Privacy Act mandates that

> [n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains...

5 U.S.C. § 552a(b). Plaintiff argues that prior to his physical examination on March, 23, 1998, the Department of Labor transmitted to Dr. Bradford inaccurate and misleading materials, specifically a report on Mumme, a suggested list of medical findings and the videotape.

Defendants contend that Plaintiff has failed to demonstrate that a disclosure was made within the meaning of the Privacy Act. Plaintiff, however, stated in his Second Amended Complaint that the Department of Labor had sent to Dr. Bradford the materials listed above. In response, Mr. Galvin did not dispute that disclosures had been made, rather he maintained that he was "unaware of any disclosures from plaintiff's claim file which did not comport with the terms of the Privacy Act." (Galvin Aff. ¶ 6 (Docket # 24).) Again, this is a legal conclusion, not a factual averment. In addition, the claim file is maintained by the OWCP, but the Government makes no allegation regarding possible disclosures from the investigation file held by the OIG.

Even if the Government did make a disclosure, however, it argues that any such disclosure was permissible pursuant to a Privacy Act exception authorizing agencies to disclose information for a "routine use." *See* 5 U.S.C. § 552a(b)(3). The Privacy Act vaguely defines "routine use" as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. §§ 552a(a)(7). In addition, the Privacy Act instructs each agency to state periodically in the Federal Register the agency's routine uses of different types of information. In the most recent posting by the Department of Labor defining "routine use" in the Federal Register, the agency states, among other things:

> (2) in the course of investigating the potential or actual violation of any law, whether civil, criminal or regulatory in nature, or during the course of a trial or hearing, or the preparation for a trial or hearing for such violation, a record may be disseminated to a federal, state, local or foreign agency, or to an individual or organization, if there is reason to believe that such agency, individual or organization possesses information or is responsible for acquiring information relating to the investigation, trial or hearing and the dissemination is reasonably necessary to elicit such information or to obtain the cooperation of a witness or an informant...

66 Fed.Reg. 36,593 (2001). Defendants argue that as part of their investigation into whether Plaintiff was committing health care fraud against the United States, it was appropriate to send certain information to Dr. Bradford before he examined Plaintiff. Thus, Dr. Bradford qualifies as an "individual" to whom the Department of Labor disclosed information in the course

of investigating Plaintiff for a potential violation of the law. *See id.* Therefore, the disclosure was a routine use.

Even if the disclosure to Dr. Bradford was a routine use, however, Plaintiff argues that it nonetheless violates the Privacy Act because the disclosure was inaccurate and it misled Dr. Bradford. Indeed, the Act requires that agencies maintain reasonably accurate records. *See* 5 U.S.C. §§ 552a(e)(5), 552a(e)(6).

Plaintiff, however, overlooks that one of the essential requirements of making a successful claim challenging an improper disclosure pursuant to the Privacy Act is that Plaintiff must substantiate that the agency disclosed information "which was contained in a system of records." *See, e.g., Beaulieu v. United States,* 865 F.2d 1351, 1352 (1st Cir.1989). The Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

▇▇ In *Beaulieu,* the federal Government argued that the plaintiff challenging a disclosure pursuant to the Privacy Act must allege that the disclosure was of information which was contained in a system of records. In response, the plaintiff contended that her failure to state " 'eight conclusory buzzwords' " in her complaint was merely a formalistic oversight that should not undermine the substance of her pleading. *See id.* Agreeing with the Government, the First Circuit ruled that "the so-called buzzwords are the whole substance of the statute, as previously empha-

sized." *Id.* "A mere reference to a statute is not enough; this is to reduce the concept of notice pleading to the point of no return. . . . Simply to state that a claim is made under a named statute is not a short and plain statement of what the claim is." *Id.* Even though the Court must construe liberally pro se plaintiffs, "pro se status does not insulate a party from complying with procedural and substantive law." *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997). Plaintiff fails to allege in Count VI that the allegedly improper disclosure was of information contained in a system of records, and therefore he cannot state a claim pursuant to the Privacy Act for an illegal disclosure. *See Beaulieu,* 865 F.2d at 1352.[7]

▇▇ Moreover, it is not clear that Plaintiff has suffered an "adverse effect" based on the alleged inaccurate disclosure, as required by 5 U.S.C. § 552a(g)(1)(D). Even though Dr. Bradford concluded in his medical report that based on what he saw on the videotape Plaintiff was malingering, the record indicates that the Department of Labor continues to issue checks to Plaintiff for disability coverage and to pay for his medical benefits. Thus, Plaintiff has not established an adverse effect stemming from the allegedly illegal disclosure.

Based on the above discussion, Count VI fails to meet the requirements of notice pleading. *See Beaulieu,* 865 F.2d at 1352. Looking to the facts on the record, the Court also finds that no genuine issue of material fact remains with regard to Count VI, and therefore, Defendants are entitled to judgment as a matter of law on Count VI.

---

**7.** In Count I of Plaintiff's original Complaint, he complains that the OWCP maintained "records in a system of records" and wrongfully refused to comply with his requests for those records. (Compl. ¶ 1 (Docket # 1).)

Plaintiff does not allege, however, that the allegedly improper disclosure was from information contained in a system of records, neither in Count VI nor elsewhere in his complaints or affidavits.

### G. Count VII

Count VII alleges that Defendants failed to establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records. Plaintiff, however, has not provided any facts to support this claim. Even after the Magistrate Judge instructed Plaintiff to elaborate on the initial Complaint, Plaintiff has not contributed anything of substance to Count VII in either the Amended Complaint or the Second Amended Complaint.[8] Therefore, the Court finds that Count VII fails to state a claim upon which relief can be granted. Moreover, by not proffering sufficient facts to support this count, Plaintiff has not met the standard of Rule 56. Thus, Count VII fails.

### H. Count VIII

 In Count VIII, Plaintiff claims that Defendants have violated his Fifth Amendment rights by singling him out for mistreatment. First, even after the Magistrate Judge instructed Plaintiff to elaborate on his initial Complaint, he has said absolutely nothing more regarding Count VIII in his Amended Complaint, Second Amended Complaint or elsewhere.[9] Second, Plaintiff proffers no facts supporting his claim that the Government has singled him out wrongly. Third, the Court already has analyzed and dismissed Plaintiff's Fifth Amendment arguments, based on the same set of circumstances, in one of Plaintiff's other lawsuits. *See Mumme v. United States*, No. 00–CV–103–B, 2001 WL 80084, at \*5–6 (D.Me. Jan. 29, 2001) (Mumme has no Fifth Amendment *Bivens* claim because the Government has not withdrawn his disability or medical benefits, and if the Government did withdraw those benefits, Mumme would have a post-deprivation remedy). Therefore, the Court finds that Count VIII fails to meet the notice requirements of Rule 8(a)(1). Moreover, by not proffering sufficient facts to support this count, Plaintiff has not met the standard of Rule 56. Thus, Count VIII fails.

### I. Fraud

In the first Amended Complaint (Docket # 2), Plaintiff makes a claim of common

---

8. Specifically, Count VII of the original Complaint states in whole,

 The Agency failed to establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records, and to protect against any anticipated threats or hazards to their security or integrity; which could result in substantial harm, embarrassment, inconvenience, or unfairness to claimant/plaintiff, on whom information is maintained; in violation of the Privacy Act.
 (Compl. ¶ 7 (Docket # 1)). Plaintiff says nothing regarding Count VII in the Amended Complaint. In the Second Amended Complaint, all that Plaintifl states with regard to Count VII is "As in all the foregoing Counts, but especially see mateıials included with the 6/23/2000 letter to Plaintiff, of DOL/OIG Disclosure Officer Pam Davis." (Second Am. Compl. ¶ 7 (Docket # 18).) Nothing in Plaintiff's other Counts addresses the adequacy of the safeguards established by the Department of Labor for its records. Again, a letter written by Ms. Davis dated June 23, 2000 is not part of the record. In addition, Ms. Davis's December 14, 1998 letter sheds no light on Count VII. (*See* Letter by Pamela Davis to Chris Mumme dated Dec. 14, 1998 (Docket # 25, Attach.).)

9. Count VIII reads in whole, "Lastly, by virtue of the foregoing counts, the Agency erred in that it treated claimant/plaintiff in a manner apart from other petitioners of Federal records; consequently violating claimant/plaintiff's 5th Amendment rights to equal protection under the law, and due process." (Compl. ¶ 8 (Docket # 1).) Neither the Amended Complaint nor the Second Amended Complaint says anything relating to Count VIII.

law fraud against Defendants.[10] In the previous Order, the Court entered partial summary judgment in Defendants' favor on Plaintiff's claim of fraud. Plaintiff asks the Court to reconsider that ruling.

Plaintiff argues that OIG agents have committed fraud against him by making the false claim that they videotaped Plaintiff while he was performing construction work in his yard on the morning of November 9, 1995, when in fact, according to Plaintiff, he was not performing any such construction. Plaintiff argues that this videotape—which is not part of the record—depicts other persons working in Plaintiff's yard. According to Plaintiff, however, the Department of Labor sent the tape to Dr. Bradford and told him that the tape depicts Mr. Mumme doing construction work in his back yard, in an effort to induce Dr. Bradford to believe that Plaintiff was engaging in strenuous activity inconsistent with his claims that he suffers from a permanent disability. Plaintiff implies that Defendants acted with the hope that Dr. Bradford would view the video, mistake the persons featured in that video for Mr. Mumme, then make an inaccurate medical diagnosis that Plaintiff is no longer disabled. After examining Plaintiff, Dr. Bradford drafted a medical report which he later submitted to the Department of Labor. In the medical report, Dr. Bradford relies on the contents of the videotape in making his determination that Plaintiff is medically able to work. (*See* Medical Report dated March 25, 1998, at 5 (Docket # 38, Attach.).)

The principle of sovereign immunity generally bars all tort claims against the United States. The United States, however, has waived sovereign immunity for a number of tort claims, as specified in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671—2680. The FTCA features several exceptions, whereby the United States reserves its sovereign immunity against tort liability. *See, e.g., Mumme v. United States Dep't of Labor,* No. 00–CV–103–B, 2001 WL 80084, at *3 (D.Me. Jan. 29, 2001).

 In particular, the United States is immune from "[a]ny claim arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h); *see, e.g., McNeily v. United States,* 6 F.3d 343, 348–49 (5th Cir.1993) (United States immune to claim of common law fraud based upon misrepresentations of fact). Central to Plaintiff's fraud claim is that the United States misrepresented material facts to Dr. Bradford. The United States retains sovereign immunity against such a claim. *See id.* In addition, the record indicates that Plaintiff never gave the United States notice prior to initiating this lawsuit that he would bring a tort fraud claim, as required by the FTCA. *See* 28 U.S.C. § 2675(a); *Dynamic Image Techs., Inc. v. United States,* 221 F.3d 34, 39 (1st Cir. 2000). For these reasons, Defendants are entitled to judgment as a matter of law against Plaintiff's fraud claim.

**J. Plaintiff's Motion to Amend Complaint**

Plaintiff also has filed a Motion to Amend Complaint (Docket # 39) to add a count of "obstruction of civil justice" based on two allegations: (1) that the Government conspired to deprive Plaintiff of his requested records, and (2) that because the Government did not disclose to Plaintiff his requested records, it led to the unfair dismissal of one of his other lawsuits against the Government, *Mumme v. United States Dep't of Labor,* No. 00–CV–103–B, 2001 WL 80084 (D.Me. Jan. 29, 2001), and the unfair dismissal of his wife's lawsuit against the Government, *Mumme v. United States,* No. 00–CV–104–B, 2001 WL 80083 (D.Me. Jan. 29, 2001). In the

---

**10.** Plaintiff does not designate this claim as a numbered count.

Motion, Plaintiff implies that he could not have brought this claim earlier because he "only recently learned of the illegality of these actions." (*See* Pl. Mot. to Amend Compl. ¶ 3 (Docket # 39).)

 Objecting to Plaintiff adding this claim, Defendants argue that such an amendment to the Complaint would be futile, unfairly prejudicial to Defendants, and would only cause further delay. The Court agrees. First, "obstruction of civil justice" is not a valid cause of action. Second, Plaintiff's new legal theory stems from the same facts as his Privacy Act request claims, that the Government wrongfully failed to disclose certain documents to him. If the Court were to treat this new claim as made pursuant to the Privacy Act, adding such a claim would be futile because the Court simply would treat it in the same way that the Court is treating Counts I and III. Third, the Court finds that granting the Motion to Amend Complaint at this late stage in the litigation would be unfairly prejudicial to Defendants and would cause unnecessary delay. Fourth, Plaintiff already has amended his Complaint twice. Therefore, the Court denies Plaintiff's Motion to Amend Complaint.

## IV. CONCLUSION

Based on the foregoing discussion, the Court GRANTS Defendants' Motion for Reconsideration (Docket # 29). The Court DENIES Plaintiff's Motion for Reconsideration (Docket # 30). The Court finds that Defendants are entitled to summary judgment against all of Plaintiff's claims. The Court DENIES Plaintiff's Motion to Amend Complaint (Docket # 39).

SO ORDERED.