# United States Court of Appeals

## For the First Circuit

No. 04-1792

CLARA ESTADES-NEGRONI,

Plaintiff, Appellant,

v.

CPC HOSPITAL SAN JUAN CAPESTRANO; DR. LUIS E. CANEPA, IN HIS
PERSONAL CAPACITY AND AS MEDICAL DIRECTOR OF FIRST OPTION
CORPORATION PUERTO RICO, A/K/A OPTIONS PUERTO RICO; FIRST OPTION
CORPORATION PUERTO RICO, A/K/A OPTIONS PUERTO RICO; DR. DOMINGO
CORDERO; DR. BOGART ESPARZA; DR. VILMA PAGAN; DR. MANUEL
RODRIGUEZ; DR. FELIX MALDONADO,

Defendants, Appellees,

JOHN DOE 99CV1469; JANE DOE 99CV1469; JIM ROE 99CV1469,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Manuel San Juan-DeMartino, with whom Law Offices of Manuel San
Juan, was on brief for appellant.
Pedro J. Varela-Fernandez, with whom Reinaldo Calderon Jimenez
and Law Office of Jose A. Masini Soler, were on brief for appellee
CPC Hospital.

Pedro R. Pierluisi, with whom Edna E. Perez Roman and O'Neill & Borges, were on brief for appellee First Option.

Ana Maria Otero and Otero & Lopez, L.L.P. were on brief for appellees Bogart Esparza, Vilma Pagan, Manuel Rodriguez, and Felix Maldonado.

Charles de Mier-LeBlanc and De Corral & DeMier were on brief for appellee Luis E. Canepa.

_____

May 31, 2005

_____

**STAHL**, **Senior Circuit Judge**.  Appellant Clara Estades-Negroni ("Estades") brought this action in the United States District Court for the District of Puerto Rico against CPC Hospital San Juan Capestrano ("CPC Hospital"), a private hospital, First Option Corporation Puerto Rico ("First Option"), a private healthcare services provider, and several private physicians (collectively, "Appellees") after she was involuntarily committed to CPC Hospital.  In her complaint, Estades alleged that Appellees were liable under 42 U.S.C. §§ 1983 and 1988 for violating her rights under the United States Constitution in connection with her commitment.  Estades also asserted that Appellees were liable under the Constitution and laws of Puerto Rico.  Appellees moved the district court to dismiss the federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] on the ground that they are not state actors and, therefore, are not subject to suit under § 1983.[2] The district court granted the motion, declined to exercise supplemental jurisdiction over the remaining state law claims, and then dismissed the action.  Estades now seeks review of the district court's finding that Appellees are not state actors and the resulting dismissal of her action.  We affirm.

---

[1]Rule 12(b)(6) provides for dismissal if there is a "failure to state a claim upon which relief can be granted."

[2]Estades' § 1988 claim is entirely dependent on the viability of her § 1983 claim.

## I.  Background

We recount and, for purposes of this appeal, accept as true the allegations in Estades' complaint.[3]  See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

In September 1996, Estades sought and began to receive psychiatric treatment from Doctor Luis E. Canepa ("Canepa"), an employee and director of First Option, at the facilities of First Option.  Her treatment was provided pursuant to the Puerto Rico Health Reform Plan (the "Plan"), which was enacted to ensure that medically indigent residents of Puerto Rico receive quality medical care.  See 24 P.R. Laws Ann. § 7001.

In accordance with the Plan, the Puerto Rico Health Insurance Administration (the "Administration"), an instrumentality of the government of Puerto Rico, was created to implement a health insurance system for the medically indigent.  See id. §§ 7003-04. As a means to fulfill its primary purpose, the Administration was given the authority to contract with private health insurance carriers to arrange for the provision of medical care to

---

[3]Estades originally filed her complaint on April 30, 1999, but she filed an amended complaint on September 10, 1999.  The allegations are taken from the amended complaint.  There are several instances where the complaint references, both directly and indirectly, statutes of Puerto Rico.  In those instances, we consider, and cite to, those statutes.  See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) ("In ruling on whether a plaintiff has stated an actionable claim, an inquiring court . . . must consider the complaint . . . and other materials fairly incorporated within it.").

indigents.[4]  See id. § 7026.  The carriers were then to hire medical professionals, and it was these professionals who were to provide the care.  Acting under the Plan, the Administration contracted with Triple S, a private health insurance carrier, and Triple S, in turn, contracted with First Option and Canepa.[5]

Between September 1996 and April 1997, Canepa treated Estades on a regular basis.  He diagnosed her as suffering from depression and prescribed for her a variety of medications.  In April 1997, Estades' mental health worsened and Canepa began discussing her condition with her son, Leonardo Velazquez Estades ("Velazquez").

On May 4, 1997, after consulting with Canepa, Velazquez brought Estades to CPC Hospital, rather than to his house, where Estades thought that he was taking her.  Upon arriving at CPC Hospital, Estades expressed a desire to leave.  However, she was forcibly restrained, injected with medication, and placed in a

_____

[4]The responsibilities of the Administration are carried out by its board of directors, which consists of seven individuals.  See 24 P.R. Laws Ann. §§ 7004-05.  The complaint alleges that Canepa was "the Administrator of the Plan's mental health services network."  Neither the complaint nor the parties' briefs expand on the responsibilities that Canepa would have had as "Administrator of the Plan's mental health services network."  In any event, the complaint does not allege that Canepa was one of the members of the Administration's board of directors, and therefore, we assume that he was not.

[5]Because the complaint alleges that Triple S contracted with both First Option and Canepa, we assume that it did.  See Rockwell, 26 F.3d at 255.  However, we doubt that Triple S was in a direct contractual relationship with Canepa, an employee of First Option.

secluded room.  That same day, Canepa sent a letter to CPC Hospital in which he assured the Hospital that it would soon receive written authorization for Estades' commitment.

Velazquez, acting pursuant to Puerto Rico Law 116 ("Law 116"), 24 P.R. Laws Ann. § 6001 et seq., then filed a petition with the Court of First Instance for San Juan, Puerto Rico, the local trial court, requesting that it authorize Estades' involuntary hospitalization.  See id. § 6002.  In Puerto Rico, an individual can be involuntarily committed only pursuant to a court order.  See id. § 6004.  One or more Appellees also filed documents with the Court of First Instance in support of Velazquez's petition.  See id. § 6003.

Estades remained involuntarily committed at CPC Hospital for a period of nineteen days.[6]  During that time, she alleges that she was secluded from other patients, physically restrained, injected with medication against her will, physically assaulted by an employee of CPC Hospital, and physically and emotionally mistreated by other Hospital employees.  At the end of the nineteen days, and as a condition of her discharge, Estades claims that she was coerced into agreeing that her commitment had been voluntary.

---

[6]We assume that the Court of First Instance granted Velazquez's petition.  However, the complaint is silent on this topic.  Nevertheless, whether the Court of First Instance ultimately granted the petition does not affect our inquiry into whether Appellees are subject to suit under § 1983.

Following her discharge, Estades brought this action against First Option, Canepa, CPC Hospital, and a number of private physicians who had interacted with her during her hospitalization. In the complaint, Estades asserted federal and state causes of action, including a § 1983 claim, against each Appellee. The federal counts were dependent on the viability of the § 1983 claim. On Appellees' motion, the district court dismissed the federal counts, based on its finding that Estades had failed to allege sufficient facts to establish that Appellees were state actors and, thus, subject to suit under § 1983. The district court determined that Estades could not show state action under any of the following three tests we have employed to decide whether a private party should be treated as a state actor: the state compulsion test, the nexus/joint action test, and the public function test. Then, acting pursuant to 28 U.S.C. § 1367(c)(3),[7] the district court refused to exercise supplemental jurisdiction over the remaining state law claims and, consequently, dismissed the entire action.[8]

Estades appeals the dismissal of her § 1983 claim and the resulting dismissal of her § 1988 claim and state law claims. Of course, if the § 1983 claim was subject to dismissal, then the

---

[7]Section 1367(c) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) [it] has dismissed all claims over which it has original jurisdiction . . . ."

[8]The state law claims were dismissed without prejudice.

-7-

district court had the authority to dismiss the § 1988 claim, as well as the state law claims. See § 1367(c)(3). Therefore, we must decide whether the district court erred in dismissing the § 1983 claim.

## II. Discussion

We review the district court's dismissal of Estades' § 1983 claim de novo. Rockwell, 26 F.3d at 255.

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State . . . .'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting § 1983). Therefore, a plaintiff claiming a § 1983 violation must allege that a person or persons acting under color of state law[9] deprived him of a federal constitutional or statutory right. See Rockwell, 26 F.3d at 256. If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal.

Here, there is no dispute that Estades, in asserting that she was involuntarily committed, alleged the deprivation of a

_____

[9]"For the purposes of section 1983, Puerto Rico enjoys the functional equivalent of statehood, and thus the term state law includes Puerto Rico law." Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 491 n.2 (1st Cir. 1996) (internal quotation marks omitted).

-8-

federal right. See, e.g., Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (holding that an individual who is involuntarily committed is deprived of his constitutional right to liberty). The disagreement is over whether she alleged facts sufficient to establish that Appellees, private individuals and entities, acted under color of state law when they participated in her involuntary commitment. For Appellees to have acted under color of state law, their actions must be "fairly attributable to the State." Lugar, 457 U.S. at 937. In other words, it must be fair to characterize them as state actors. See id.[10]

It is "[o]nly in rare circumstances" that private parties can be viewed as state actors. Harvey, 949 F.2d at 1130. We have employed the following three tests to determine whether a private

---

[10]In Lugar, 457 U.S. at 937, the Supreme Court articulated a two-part test that must be satisfied before it can be said that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State":

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . [And, s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

Although the two parts of the test merge "when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions," they "diverge when the constitutional claim is directed against a party without such apparent authority, i.e., against a private party." Id. Hence, the two parts of the test diverge in this case. Nonetheless, in her complaint, Estades alleged facts sufficient to satisfy the first part of the test--she alleged that Appellees acted pursuant to Law 116, a state statute. Consequently, our focus is on the second part of the test.

party fairly can be characterized as a state actor:  the state compulsion test, the nexus/joint action test, and the public function test.    Rockwell, 26 F.3d at 257; see Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18-21 (1st Cir. 1999). The district court considered each of these tests on the assumption that, were any of them met, the state action requirement would be satisfied.  The parties accepted this approach, and therefore, we follow it as well.

Under the state compulsion test, a private party is fairly characterized as a state actor when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).  The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]."  Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999) (internal quotation marks omitted) (first alteration in original); see Perkins, 196 F.3d at 21.  And, in accordance with the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function

that has been "traditionally the exclusive prerogative of the State."  Blum, 457 U.S. at 1005 (internal quotation marks omitted).

We now address whether Estades' complaint alleged facts sufficient to support a finding that Appellees are fairly regarded as state actors under any of the above tests.[11]  We recognize that "[u]nder any formula . . . , the [determination as to] whether private conduct is fairly attributable to the state must be [made] based on the circumstances of each case."  Bass, 180 F.3d at 242.

A.         State Compulsion Test

Here, there can be no finding of state action under the state compulsion test, as Estades failed to allege facts that would support a finding that the state coerced or encouraged Appellees to pursue or otherwise participate in her involuntary commitment.  To be sure, Estades alleged that Appellees acted in accordance with the procedures outlined in the state statutory scheme established to govern involuntary commitment.  See 24 P.R. Laws Ann. § 6001 et seq.  However, that scheme does not compel or encourage involuntary commitment.[12]  Rather, it merely provides a mechanism through which

---

[11]Although Estades did not clearly articulate an argument under the state compulsion test on appeal, Appellees addressed the issue and, for the sake of completeness, so do we.

[12]Although 24 P.R. Laws Ann. § 6001 provides that "[e]very person over 18 years of age who is subject to involuntary admission and immediate hospitalization must be admitted to a mental health facility according to the provisions of this code" (emphasis added), a review of the entire commitment scheme reveals that it gives considerable discretion to private parties.  Before a court can order involuntary commitment, it must be presented with a

-11-

private parties can, in their discretion, pursue such commitment. Thus, that allegation does not support a finding of state action. See Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 493 (1st Cir. 1996); see also Harvey, 949 F.2d at 1131 ("[Appellant] cannot seriously allege that the relevant provisions of the [statutory scheme] were enacted because the state wants to encourage commitments . . . ." (internal quotation marks omitted)). Estades also alleged that a state instrumentality was charged with implementing the health insurance system under which Appellees acted and that a state court was involved in her commitment. Still, she did not allege that the instrumentality or court coerced or encouraged Appellees to act in connection with her commitment. Therefore, those allegations also fail to support a finding of state action.

---

petition for such commitment by "any person 18 years old or over," id. § 6002(a), and a certificate from a psychiatrist indicating that the individual in question "is subject to . . . and needs . . . admission," id. § 6003. Significantly, even "[w]hen a person is subject to involuntary admission and in such a condition that immediate hospitalization is necessary," the scheme merely provides that "any person 18 years old or over may file [the required] petition in court." Id. § 6002(a) (emphasis added). Moreover, the scheme does not coerce or encourage psychiatrists to issue the aforementioned certificates or hospitals (or their employees) to pursue or otherwise participate in an involuntary commitment. Cf. S.P. v. City of Takoma Park, 134 F.3d 260, 268 (4th Cir. 1998) ("We conclude . . . that the statutory scheme, when viewed as a whole, is more permissive than mandatory, and that it grants private physicians complete medical discretion in determining whether an individual should be involuntarily committed.").

B.        Nexus/Joint Action Test

Further, Estades has failed to plead sufficient facts to justify a finding of state action under the nexus/joint action test.  The complaint simply does not indicate that the state "so far insinuated itself into a position of interdependence with [Appellees] that it [should be considered] a joint participant in" their actions pertaining to the involuntary commitment in question. Bass, 180 F.3d at 242 (internal quotation marks omitted) (first alteration in original).  The complaint does allege that:  state statutes provide the mechanism for involuntary commitment; the state extensively regulates such commitment; Appellees received money derived from the state; and Appellees sought court authorization for Estades' commitment.  However, even if true, none of that would justify a finding that Appellees are state actors. See, e.g., id. at 243 ("The fact that the defendants . . . invoked the assistance of the courts . . . is not sufficient to show a nexus or joint effort between the defendants and the state."); Rockwell, 26 F.3d at 258 ("[G]overnment regulation, even extensive regulation, and the receipt of [public] funds . . . are insufficient to [satisfy the nexus/joint action test]."); Spencer v. Lee, 864 F.2d 1376, 1381 (7th Cir. 1989) (finding that a private party is not transformed into a state actor merely because the private party acted pursuant to a state statute).

Moreover, the complaint does not allege that the state was in any way, much less intimately, involved in the initial decision to pursue involuntary commitment,[13] or in later decisions concerning the treatment Estades allegedly received while she was committed. See Perkins, 196 F.3d at 21 (finding significant "the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs); cf. Jensen v. Lane County, 222 F.3d 570, 575 (9th Cir. 2000) ("The record is clear that [defendant] and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill . . . . County employees initiate the evaluation process [and] there is significant consultation . . . among . . . [private] psychiatrists and county . . . workers . . . ."). On the facts alleged, we fail to see how Estades could show that a relationship existed between Appellees and the state that would justify a finding of state action under this test.

In her appellate brief, seemingly in an effort to augment her nexus/joint action argument, Estades asserts that because Appellees "were employed by the [state]" to provide psychiatric treatment pursuant to the Plan, they are properly characterized as state actors. To support her assertion, she cites West v. Atkins,

---

[13]It asserts that Estades' son, after consulting with Canepa, petitioned a court to authorize her commitment, and that one or more Appellees filed documents in support of the petition.

487 U.S. 42 (1988), a case in which the Supreme Court held that a private physician under contract with the state to provide medical care to prison inmates was a state actor. However, her complaint cannot fairly be read to allege that any Appellee was employed by, or otherwise bound to, the state.[14] Therefore, Estades' reliance on West is misplaced, see Ellison v. Garbarino, 48 F.3d 192, 197 (6th Cir. 1995) ("[T]he West case does not govern [because] . . . [t]he present defendants are in no way contractually bound to the state."),[15] and her employment argument fails.

---

[14]In a single sentence, the complaint states: "As participants in the . . . Plan, [Appellees] were contracted by" the state. But, neither that statement nor the assertion in Estades' brief that Appellees "were employed by the [state]" can be squared with the facts alleged or statutes fairly referenced in the complaint. As we have stated, the complaint alleges that an instrumentality of the state, the Administration, acting in accordance with the Plan, contracted with a private health insurance carrier, Triple S, which, in turn, contracted with First Option and Canepa. A review of the statute governing the Administration's ability to enter into contracts reveals that the administration is only authorized to contract with "insurers licensed to do health insurance business in Puerto Rico." 24 P.R. Laws Ann. § 7026. Thus, the complaint alleges, and the statutes referenced therein confirm, that it was only to Triple S, and not to the state, that First Option and Canepa were bound. Moreover, the complaint does not allege any facts that support the assertion that CPC Hospital or its employees were employed by the state (or, for that matter, Triple S). See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 10 (1st Cir. 2004) (In reviewing a complaint in an appeal from a grant of a motion to dismiss, "[w]e ignore . . . bald assertions . . . [and] unsubstantiated conclusions . . . ." (internal quotation marks omitted)).

[15]In addition, West is distinguishable from the case at hand because in West, the defendant-physician's actions took place within a state-run prison hospital and the plaintiff-prisoner was precluded by state law from seeking treatment from a physician of his own choosing. 487 U.S. at 43-44. Here, however, the actions

-15-

Moreover, Estades, citing Lugar, 457 U.S. at 941, claims that Appellees should be regarded as state actors "because they relied upon an unconstitutional state statut[ory scheme] to involuntarily hospitalize" her. But, Lugar makes clear that even though "the procedural scheme created by [a] statute . . . is the product of state action," id., a private party normally does not become a state actor merely by invoking it. See id. at 939 n.21 ("[W]e do not hold today that a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law. The holding today . . . is limited to the particular context of prejudgment attachment." (internal quotation marks and citation omitted)); see also Spencer, 864 F.2d at 1381 ("The statutes authorizing . . . private activities may or may not be constitutional; the activities themselves remain private." (internal citations omitted)).

C.      Public Function Test

Having found no state action under the above two tests, we turn to the last of the three tests:  the public function test. As has been said, there can be state action under this test only if Appellees performed a public function that was "traditionally the

_____

in question occurred within a private hospital and, in theory, Estades was free to seek treatment from physicians other than those associated with the Plan.

-16-

exclusive prerogative of the State." <u>Blum</u>, 457 U.S. at 1005.[16]  In her complaint, and on appeal, Estades makes two public function arguments:  first, she alleges that Appellees, "in causing [her] involuntary commitment," performed a public function; and, second, she asserts that Appellees "performed the public function of providing free medical and psychiatric services to indigent" persons.  We now address the two arguments, beginning with the involuntary commitment argument.

     1.  Involuntary Commitment

There can be no finding of state action under the public function test in connection with Estades' involuntary commitment. This is because involuntary commitment is not a function that is or has been reserved exclusively to the state in Puerto Rico, and therefore, Appellees, in pursuing or otherwise participating in Estades' commitment, could not have performed a public function within the meaning of this test. <u>See</u> P.R. Laws Ann. § 6001 <u>et seq.</u> (indicating that private parties have been intimately involved in the involuntary commitment process in Puerto Rico since 1980)[17]; <u>see</u>

---

[16]The few activities that have been found to satisfy this demanding standard include "the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park." <u>Perkins</u>, 196 F.3d at 19 (internal quotation marks omitted).  "When a plaintiff ventures [beyond this short list of activities], she has an uphill climb."  <u>Id.</u>

[17]For example, the statutory scheme governing involuntary commitment in Puerto Rico since 1980, 24 P.R. Laws Ann. § 6001 <u>et seq.</u>, provides that:  "any person 18 years old or over" may

-17-

also <u>Jackson</u> v. <u>Metro. Edison Co.</u>, 419 U.S. 345, 352-53 (1974) ("If we were dealing with the exercise by [Appellee] of some power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain, our case would be quite a different one.") <u>cf.</u> <u>Bass</u>, 180 F.3d at 243 (holding that involuntary commitment is not a function traditionally reserved exclusively to the state in Mississippi); <u>Ellison</u>, 48 F.3d at 196 (same in Tennessee); <u>Rockwell</u>, 26 F.3d at 258-60 (same in Massachusetts); <u>Harvey</u>, 949 F.2d at 1131 (same in Georgia); <u>Spencer</u>, 864 F.2d at 1379-81 (same in Illinois). Because involuntary commitment is a function that is and has been routinely performed by private parties in Puerto Rico, Estades' public function argument as it relates to involuntary commitment fails.

2. Provision of Medical and Psychiatric Services

Estades' argument that Appellees are state actors under the public function test because they provided health services to indigents is similarly flawed. The provision of health services is not and has never been the exclusive province of the state in Puerto Rico. <u>See</u> 24 P.R. Laws Ann. § 7001 (noting that "[f]rom the beginning of th[e twentieth] century, Puerto Rico's public policy

---

initiate the involuntary commitment process by "fil[ing] a petition in court," <u>id.</u> § 6002; before a court can rule on a petition, it must possess "a certificate [from] a psychiatrist" attesting to the need for commitment, <u>id.</u> § 6003; and if a petition is granted, the subject of the petition is to be taken to <u>any</u> "mental health facility," <u>id.</u> § 6004; <u>see</u> <u>id.</u> § 4002(11).

-18-

has revolved around the attitude that the Government has the responsibility of offering direct health services" and that "[p]ursuant to such policy, two health systems have evolved," one public and one private). Thus, there can be no finding of state action under the public function test.

### III. Conclusion

The district court's dismissal of Estades' federal action is **<u>affirmed.</u>** We express no opinion as to whether the allegations in the complaint, if true, state a viable claim or viable claims under Puerto Rico law.