**Robert ALDRICH, Plaintiff,**

**v.**

**Raquel RUANO, Defendant.**

**Civil Action No. 13–10754–WGY.**

United States District Court,
D. Massachusetts.

June 24, 2013.

Robert Aldrich, Shirley, MA, pro se.

## *MEMORANDUM*

YOUNG, District Judge.

On March 25, 2013, the plaintiff Robert Aldrich ("Aldrich"), a prisoner in custody at MCI Shirley, in Shirley, Massachusetts, filed a civil rights action alleging: (1) a violation of his constitutional rights pursuant to 42 U.S.C. § 1983; (2) a violation of 18 U.S.C. § 2511 *et seq.* (prohibiting the unauthorized interception, disclosure, and use of wire, oral, or electronic communications unless an exception is specifically authorized); (3) a violation of 28 U.S.C. § 1927 (providing for counsel's liability for excessive costs incurred because of unreasonable and vexatious conduct); and (4) a claim under Mass. Gen. Laws ch. 272, § 99 (making illegal the recording of a conversation or telephone call unless both parties consent to the recording). He names as the defendant Attorney Raquel Ruano ("Ruano"), a defense attorney representing Boston Police Officer Kevin Doogan and others in a previously-filed lawsuit, *Aldrich v. Town of Milton, et al.*, Civil Action No. 09–11282–WGY.

In that earlier case, Aldrich alleged, *inter alia*, racial profiling and Fourth Amendment violations in connection with a traffic stop and search of the vehicle driven by him on March 7, 2007. On March 11, 2013, a jury trial commenced, and on March 15, 2013, the jury returned a verdict for the defendants. Judgment in favor of the defendants entered on March 19, 2013. *See* Judgment (Docket No. 431). On March 20, 2013, Aldrich filed a Notice of Appeal to the United States Court of Appeals for the First Circuit ("First Circuit"). *See* Notice of Appeal (Docket No. 432). That appeal is pending.

Thereafter, Aldrich filed the instant action alleging that on March 12, 2013, during the jury trial in *Aldrich v. Town of Milton, et al.*, Attorney Ruano illegally eavesdropped and used a cellular telephone to record his private conversation with trial witnesses inside the courtroom, in order to impede and interfere with Aldrich's constitutional right of access to the courts. Specifically, Aldrich alleges that this Court authorized him to conference with his witnesses inside the courtroom because he is a prisoner in state custody (and thus unable to move about freely). He was sitting at a table with two of his witnesses (*i.e.*, his mother and father). Attorney Ruano sat at the table beside him. He claims that she activated features on her cell phone and then placed the cell phone on the table, at an angle pointed toward him. During his conversation with his parents, she continued to touch the screen and moved the cell phone as if accessing its features. After Aldrich concluded his conversation, Attorney Ruano asked to speak with him, and accused him of violating the Court's sequestration order by discussing the case with sequestered witnesses. She indicated that she had "overheard" Aldrich discussing the case. Aldrich then asked her whether she had permission to use her cell phone in the courtroom and record his conversations. He accused her of violating his privacy. Attorney Ruano responded that, as an attorney, she was permitted to have a cell phone in the courtroom. Aldrich claims she did not deny that she had recorded his conversation.

When trial resumed, Attorney Ruano brought the matter to this Court's attention, at which time Aldrich objected and complained about the violation of his privacy rights. This Court dismissed Attorney Ruano's allegations concerning violation of the sequestration order since Aldrich was acting *pro se* and needed to prepare his witnesses. The Court took no action on Aldrich's oral complaint of eavesdropping.

Aldrich alleges that the next day, Attorney Ruano had initiated a subpoena process through her co-counsel, and served subpoenae on his parents while they were waiting in the conference room. The subpoenae commanded them to appear in court on March 14, 2013, and to produce a copy of all letters written by him to them, since March 9, 2007. When his witnesses took the stand, Attorney Ruano examined them and accused them of concealing the contents of their conversation with Aldrich the previous day. She also accused them of testifying as Aldrich had directed them to testify, in violation of the sequestration order. Aldrich objected, and at sidebar, again complained about Attorney Ruano's eavesdropping. He stated her allegations were not true and were intended to influence the jury to discredit and intimidate his witnesses. This Court took no action on Aldrich's assertions, but instructed Attorney Ruano to move on with her questioning.

On March 15, 2013, Attorney Ruano engaged the services of a private investigator to eavesdrop on Aldrich's witnesses while they were sitting in the conference room adjacent to the courtroom. That investigator was called as a witness and questioned about what he overheard the witnesses discussing. Over Aldrich's objection, the private investigator stated that he heard that Aldrich's father had two [of the requested] letters but he was not going to produce them. The investigator also testified that his mother stated that [Aldrich's father's plan of action] was good. Aldrich asserts that this tactic was used as a tool to discredit his witnesses. He contends that Attorney Ruano stressed the lack of credibility during her closing argument, and that the jury was persuad-

ed by her arguments, resulting in a verdict in favor of the defendants.

Finally, Aldrich contends that as a result of Attorney Ruano's eavesdropping and recording of his conversation, she substantially affected the jury and contributed to his loss of his civil action and an award of damages.

He seeks declaratory and injunctive relief, as well as punitive damages and compensatory damages of $700,000.00. Along with the Complaint, Aldrich filed an Application and a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), without a certified prison account statement. Thereafter, on May 22, 2013, Aldrich filed a Motion to Appoint Counsel (Docket No. 4), and a Motion for Leave to Effectuate Service of Process by United States Marshal and to Waive Fees/Costs (Docket No. 5).

On May 31, 2013, this Court entered an Electronic Order (Docket No. 7) denying Aldrich's motion, however, the Electronic Order did not specify to which motion the ruling referred. Additionally, the Electronic Order dismissed this case, stating, in part: "Case dismissed sua sponte for failure to state a cause of action. An opinion will follow." *Id.*

On June 17, 2013, Aldrich filed a Notice of Appeal (Docket No. 8). *See Aldrich v. Ruano,* No. 13–1798 (1st Cir.2013).

### ANALYSIS

This Memorandum sets forth the reasons for dismissal of this action pursuant to the Electronic Order, and clarifies the rulings on Aldrich's Motions.

### I. The Motion for Leave to Proceed In Forma Pauperis

Where, as here, the plaintiff is a prisoner, a request to proceed without prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint ... obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). This information is necessary for the Court to assess Aldrich's filing fee obligations pursuant to 28 U.S.C. § 1915(b).

■ As noted above, Aldrich failed to file his certified prison account statement as required. Accordingly, this Court will *DENY* Aldrich's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) as defective.

Notwithstanding the denial of this motion, however, this does not absolve Aldrich from his obligations to pay the entire $350.00 filing fee for this action, which was due at the time of filing of the Complaint. This Court will enter an Order assessing Aldrich's filing fee obligations pursuant to 28 U.S.C. § 1915(b) upon receipt of his prison account statement filed in connection with any Motion for Leave to Proceed on Appeal *in forma pauperis,* which must be filed with the District Court in the first instance. Aldrich is advised that failure to satisfy the filing fee requirements of the United States Court of Appeals for the First Circuit ("First Circuit") may result in the dismissal of his appeal by the First Circuit.

### II. The Motion For Leave to Effectuate Service of Process by the United States Marshal

In light of the dismissal of this action on May 31, 2013, and in view of the denial of Aldrich's in forma pauperis motion, Aldrich's Motion for Leave to Effectuate Service of Process by United States Marshal and to Waive Fees/Costs (Docket No. 5) will be *DENIED* as moot.

### III. *Screening of the Complaint*

█ The Prison Litigation Reform Act ("PLRA"), Title VIII of Pub. L. 104–134, 110 Stat. 1321–1375 (1996) includes several provisions which grant this Court the authority to screen and dismiss prisoner complaints. *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[1] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[2]

█ Here, however, Aldrich has not been permitted to proceed *in forma pauperis* and is not suing a governmental officer or employee. Thus, no preliminary screening was authorized under these statutory provisions. Nevertheless, this Court always has inherent authority to review a case to determine, among other things, whether or not it is frivolous as that term is used in legal parlance. *See Bustos v. Chamberlain*, 2009 WL 2782238, *2 (D.S.C.2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is ·not frivolous") *citing, inter alia, Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307–308, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Pillay v. INS*, 45 F.3d 14, 16–17 (2d Cir.1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the Court still had inherent authority

"wholly aside from any statutory warrant" to act *sua sponte* ); and *Rolle v. Berkowitz*, 2004 WL 287678, *1 (S.D.N.Y.2004) (*sua sponte* dismissal in fee-paying pro se case is warranted where the claims presented no arguably meritorious issue to consider). *See also Gaffney v. State Farm Fire and Cas. Co.*, 294 Fed.Appx. 975, 977 (5th Cir.2008) (unpublished decision stating: "This court has on numerous occasions recognized the inherent authority of a district court to dismiss a complaint on its own motion for failure to state a claim.").

In connection with the preliminary screening, Aldrich's *pro se* Complaint was construed generously. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir.2000). Even under a broad reading, however, all claims were dismissed on May 31, 2013 for the reasons set forth below.

### IV. *Failure to State a Plausible Section 1983 Claim Upon Which Relief May Be Granted*

█ Aldrich's constitutional claims under 42 U.S.C. § 1983 fail at the outset. "A section 1983 violation occurs when an offi-

---

**1.** Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), or if the action fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(ii) and (iii). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under section 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. *Neitzke*, 490

U.S. at 327–328, 109 S.Ct. 1827; *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

**2.** Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

cial acting *under color of state law* acts to deprive an individual of a federally protected right." *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir.2008) (emphasis added). Section 1983 ordinarily does not create a right of action against private parties.

■ The First Circuit employs a three-part test to determine whether a private party can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.[3] *Estades–Negroni v. CPC Hosp. San Juan Capestrano,* 412 F.3d 1, 4–7 (1st Cir.2005) citing *Rockwell v. Cape Cod Hospital,* 26 F.3d 254, 257 (1st Cir.1994) and *Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 18–21 (1st Cir.1999).

■ Here, Aldrich has not alleged any facts whatsoever from which this Court reasonably may infer that Attorney Ruano was acting "under color of law" in accordance with *Estades–Negroni.* The mere fact that she has been licensed to practice law by the state is not sufficient to implicate state action. *See Runge v. Kelly,* 2006 WL 167497 (D.Mass.2006) (Stearns, J.) (discussing three part test and concluding that private lawyers do not become state actors merely by being licensed by the State). Similarly, the fact that she represented governmental defendants does not make her a state actor. It is well-settled that a lawyer (even a court-appointed one) does not act under the color of state law in performing a lawyer's traditional function as counsel to a party. *See Polk County v. Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Malachowski v. City of Keene,* 787 F.2d 704, 710 (1st Cir.1986); *see generally Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D.Mass.2001) (Stearns, J.) *citing Polk,* 454 U.S. at 325, 102 S.Ct. 445, *Harris v. Champion,* 51 F.3d 901, 909–10 (10th Cir. 1995). Although Aldrich may take issue with Attorney Ruano's conduct while representing the defendants at the jury trial, there can be no reasonable basis to consider that Attorney Ruano was not performing the traditional functions of a lawyer.

## V. Failure to State Plausible Claim Under 28 U.S.C. § 1927 Upon Which Relief May be Granted

■ Aldrich's claim under 28 U.S.C. § 1927 is not cognizable because this provision does not contain an explicit private cause of action, nor is there any basis to find that Congress intended to imply one. *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP,* 2010 WL 4339368, *10 (D.Nev.2010). While a party may move the Court for the imposition of sanctions, section 1927 contem-

---

**3.** "Under the state compulsion test a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" *Estades–Negroni,* 412 F.3d at 4 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Under the nexus/joint action test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activi- ty].'" *Id.* at 5 (quoting *Bass v. Parkwood Hospital,* 180 F.3d 234, 242 (5th Cir.1999)). Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" *Id.* (quoting *Blum,* 457 U.S. at 1005, 102 S.Ct. 2777). "The First Circuit has suggested that it would require a contractual relationship to justify a finding of state action." *Mandeville v. Merrimack County Dept. of Corrections,* 2006 WL 3313847, *2 (D.N.H. 2006) citing *Estades–Negroni,* 412 F.3d at 7.

plates that a court, not a private litigant, may enforce the provision in its discretion. *Id.*

### VI. *Failure to State a Plausible Claim Based on Conversation Overheard by the Defendant*

 Aldrich asserts violations of the federal and state wiretapping laws based on Attorney Ruano's eavesdropping by overhearing his conversation. *See* 18 U.S.C. § 2511; Mass. Gen. Laws ch. 272, § 99. Neither of these claims, however, is cognizable because the statutes do not encompass eavesdropping though hearing without an intercepting device.

Mass. Gen. Laws ch. 272 § 99(C)(1) provides for a private cause of action and states that any person who "willfully commits an interception, attempts to commit an interception, or procures any other person to commit an interception" may be punished with a fine of up to ten thousand dollars, imprisoned for up to five years, or both. *Id.* An "interception" under Gen. Laws ch. 272 § 99(B)(4) is defined as "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication *through the use of any intercepting device* by any person other than a person given prior authority by all parties to such communication." *Jean v. Massachusetts State Police*, 492 F.3d 24, 26 n. 2 (1st Cir.2007) (emphasis supplied).

Similarly, section 2511 of Title 28 provides, in relevant part, that: "(1) [e]xcept as otherwise specifically provided in this chapter any person who (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5). *See* 28 U.S.C. § 2511(1)(a). Section

2520(a) of Title 18 provides for a private cause of action for civil damages for violations of § 2511. *See* 18 U.S.C. § 2520(a).

"Oral communication" under § 2511 "means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 28 U.S.C. § 2510(a)(2). Additionally, "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication *through the use of any electronic, mechanical, or other device.* 28 U.S.C. § 2510(4) (emphasis supplied).

Accordingly, to the extent that Aldrich's claims are based on communications overheard by Attorney Ruano, his federal and state claims must be dismissed.

### VII. *Claims Based on Alleged Cell Phone Recording of Plaintiff's Conversation With Others*

 Aldrich may assert a claim under 18 U.S.C. § 2511 through § 2520 provided that his communication was "not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(a)(2). This entails a consideration whether there was a reasonable expectation of privacy in the communication. *See Gennusa v. Shoar*, 879 F.Supp.2d 1337, 1347 (M.D.Fla.2012) (stating: "[t]he Eleventh Circuit has held that courts should apply the Fourth Amendment's reasonable expectation of privacy test to determine whether the 'oral communication' requirement under the Act has been met") *citing United States v. McKinnon*, 985 F.2d 525, 527–28 (11th Cir.1993). Factors to consider in determining whether a reasonable person would have an expectation of privacy in an oral conversation include: the nature of the location where the interception took place (whether it was

in a private or a public locale); whether the conversation could be overheard with the naked ear; the subject matter of the conversation (*e.g.*, business versus personal); the volume of the conversation; the proximity or potential of other individuals to overhear the conversation; the potential for communications to be reported; the affirmative actions taken by the speaker to shield his privacy; and the need for technological enhancements to hear the communications. *Reynolds v. City & County of San Francisco*, 2009 WL 3569288, *4 (N.D.Cal.2009) (citing cases for these factors).

The determination requires a case-by-case analysis considering the facts of the particular situation. Here, however, in the unique circumstances of this case, the Court can decide this matter *sua sponte.*[4]

This Court is well aware that "the presiding judge may not testify as a witness at the trial." Fed.R.Evid. 605. Here, this Court was not a witness to any of the interactions about which Aldrich complains as they took place during the Court's morning recess and this Court had left the bench.

The Court may, however, "judicially notice a fact that is not subject to reasonable dispute." Fed.R.Evid. 201(b), and "may take judicial notice at any stage of the proceeding." Fed.R.Evid. 201(d). Here, the Court judicially notices three points:

First, Courtroom 18 of the John Joseph Moakley Federal Courthouse in Boston (where the underlying trial was being conducted) is one of the six largest courtrooms in the courthouse. Plaintiff and defense counsel tables are placed immediately adjacent to one another within the bar enclosure with approximately a three foot gap between them. The courtroom is well lighted and the acoustics within the center of the bar enclosure (where the counsel tables are placed) are particularly acute as the courtroom ceiling is domed immediately overhead.

Second, since Aldrich was a prisoner in state custody, he was, pursuant to the state regulations, accompanied at all times by two transport officers of the Massachusetts Department of Corrections responsible for his custody.

Third, the Court takes judicial notice of the transcript of the proceedings in the underlying case. Two excerpts are germane. The Court, in its initial charge, explained and demonstrated to the jury and all parties that the acoustics in the courtroom are very good and are especially acute in the center of the bar enclosure. Then, immediately before the recess during which the incident occurred about which Aldrich complains, he asked the Court for a chance to speak with his parents who were present. After checking with the Massachusetts Transport Officers, the Court granted such permission and left the bench for the recess.

In light of the three points judicially noticed, it is utterly implausible that Aldrich could have had any expectation of privacy in talking to his parents (and attempting to prepare them to testify). *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127

---

**4.** The Court need not address various other issues raised by this Complaint, such as issue preclusion/collateral estoppel, joinder of necessary parties, the application of 42 U.S.C. § 1997e(e) (providing that: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."), and the effect of the pending appeal in the prior suit. This Court makes no determination as to the merits of any of these issues at this time.

S.Ct. 1955, 167 L.Ed.2d 929 (2007).[5] Aldrich and his parents were talking in a courtroom open to the public, within which Attorney Ruano had every right to move within the bar enclosure and occupy a counsel table three feet away. Most important, Aldrich was under the constant scrutiny of the two Massachusetts Transport Officers who no doubt were alert to the possibility of some contraband passing between them. Indeed, the only way this conversation could have been more public was to amplify and broadcast it. Since this is so, it is manifest that there was no violation either of 18 U.S.C. § 2511 or Mass. Gen. Laws ch. 272, § 99.

## VIII. *The Motion to Appoint Counsel*

In view of the dismissal of this action on May 31, 2013 for the reasons set forth in this Memorandum, there is no good cause to appoint *pro bono* counsel for Aldrich. Accordingly, this Court will *DENY* the Motion to Appoint Counsel (Docket No. 4).

## CONCLUSIONS

For these reasons, the Court dismissed this action *sua sponte* on May 31, 2013. *See* Electronic Order (Docket No. 7).[6] Further, in order to clarify the record, this

Court hereby *DENIES* Aldrich's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), his Motion for Leave to Effectuate Service of Process by the United States Marshal and to Waive Fees/Costs (Docket No. 5), and his Motion to Appoint Counsel (Docket No. 4).

---

5. Respected Scholars have been virtually unanimous in condemning the reasoning of *Twombly* and *Iqbal* and the violence these decisions do the Rules Enabling Act process. See e.g. Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Civil Procedure*, 88 N.Y.U. L.Rev. 286 (2013); Stephen B. Burbank & Stephen N. Subrin, *Litigation and Democracy: Restoring a Realistic Prospect of Trial*, 46 Harv. C.R.-C.L. L.Rev. 399 (2011); Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1 (2010); Hon. John P. Sullivan, *Twombly and Iqbal: The Latest Retreat from Notice Pleading*, 43 Suffolk U.L.Rev. 1 (2009); Mark Hermann, James M. Beck & Stephen B. Burbank, Debate, *Plausible Denial: Should Congress*

*Overrule Twombly and Iqbal?*, 158 U. Pa. L.Rev. PENNumbra 141 (2009). Persuaded by this tsunami of criticism, this Court frankly has been very chary of dismissing a complaint that passes the *Conley v. Gibson* test,

Here is such a case. Aldrich is a skilled pro se pleader and his complaint adequately limns a violation of 18 U.S.C. § 2511 and Mass. Gen. Laws Ch. 272, § 99 by recording the conversation between Aldrich and his parents. The problem is that the conversation was in no sense "private" and his allegation to the contrary is so implausible as to border on the preposterous.

6. For purposes of 28 U.S.C. § 1915(g), this Court deems the dismissal of this action to be a decision on the merits.