Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| IVIA M. REILOVA COBOS Y/O IVETTE M. PÉREZ REILOVA<br><br>Querellante-Recurrente<br><br>Vs.<br><br>CONSEJO DE TITULARES COND. JARDINES DE CUENCA, JUNTA DE DIRECTORES COND. JARDINES DE CUENCA<br><br>Querellada-Recurrido | KLRA202400323 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.<br><br>C-SAN-2023-0013191<br><br>Sobre:<br><br>Condominios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante nos la Sra. Ivia M. Reilova Cobos (en adelante, parte Recurrente y/o señora Reilova Cobos) y la Sra. Ivette M. Pérez Reilova (en adelante, parte Recurrente y/o señora Pérez Reilova) mediante *Revisión Judicial* y solicitan que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (en adelante, DACo). La agencia, mediante la *Resolución* recurrida desestimó la querella presentada en contra del Consejo de Titulares, y la Junta de Directores del Condominio Jardines de Cuenca.

Por los fundamentos que expondremos a continuación, revocamos la *Resolución* recurrida.

**-I-**

Según consta en el expediente, la señora Reilova Cobos es dueña de un apartamento en el Condominio Jardines de Cuenca. El 22 de noviembre de 2022 el Consejo de Titulares celebró una Asamblea Ordinaria. En esta, la señora Reilova Cobos no asistió

personalmente, más bien asistió su hija, la señora Pérez Reilova, en representación de su progenitora mediante Escritura Núm. 94 de *Poder General y Duradero*, otorgada el día 26 de junio de 2019, ante el Notario Daniel Enrique Matos Meléndez, para todo aquello relacionado a la propiedad de la señora Reilova Cobos en el Condominio Jardines de Cuenca. En la reunión, la señora Pérez Reilova pudo votar en representación de la señora Reilova Cobos, pero no pudo expresarse en cuanto a varios asuntos discutidos. Esto fundamentado en la nota al calce de la Regla 1, de la Reglas de Debate del condominio: "Conforme con el Art. 51 de la Ley de Condominios de 2020 los representantes autorizados tendrán derecho al voto mas no a hacer expresiones o proposiciones en asambleas".[1]

Así las cosas, las partes Recurrentes presentaron una *Querella* ante el DACo, solicitando que se declare nula dicha Asamblea, y en consecuencia se dejen sin efecto las determinaciones tomadas por el Consejo de Titulares del Condominio. Esbozaron que la razón para ello es que dicho Consejo privó a la señora Pérez Reilova de su derecho a su libertad de expresión. Es decir, que el Consejo limitó la participación de la Apoderada solo a poder votar, mas no a participar, presentar mociones, hablar en turno a favor o en contra de lo que se estuviese dilucidando para votación.

Celebrada la vista adjudicativa, DACo emitió la *Resolución* recurrida en la cual consignó las siguientes determinaciones de hechos:

1. La parte querellante, Ivia Merecedes Reilova Cobos es titular del apartamento 801-2B del Condominio Jardines de Cuenca, el cual se encuentra sometido al régimen de propiedad horizontal.

2. La Sra. Ivette M. Pérez Reilova es apoderada de la querellante mediante Escritura de Poder General y Duradero otorgada el 26 de junio de 2019 ante el notario Daniel Enrique Matos Meléndez.

---

[1] En su parte pertinente el artículo 51 lee: "El poder para representar a un titular da derecho al voto mas no a hacer expresiones o hacer proposiciones".

3. El 22 de noviembre de 2022, se celebró en el Condominio Jardines de Cuenca una Asamblea Ordinaria.

4. La Sra. Ivette M. Pérez [Reilova] estuvo presente en representación de la Sra. Ivia Reilova Cobos, por virtud del poder general otorgado ante notario.

5. A la apoderada de la querellante, a pesar de que se le permitió votar, no se le permitió hablar o de otra forma presentar proposiciones o expresarse.

6. Debido a lo anterior, la parte querellante impugna la asamblea celebrada el 22 de noviembre de 2022 y solicita que este Departamento declare su nulidad y nueva celebración.

7. Citadas las partes a una vista administrativa mediante videoconferencia, luego de los trámites procesales de rigor, estuvieron de acuerdo en que la controversia era una que podía resolverse de manera sumaria, toda vez que era una puramente de interpretación del derecho.[2]

Tras examinar el Art. 51 de la Ley de Condominios, el DACo concluyó:

> En la querella de epígrafe, la apoderada de la titular ciertamente podía votar en las determinaciones del Consejo de Titulares, pero no puede hacer expresiones o hacer proposiciones toda vez que así lo dispone la ley. Por tanto, concluimos que en cuanto a la controversia traída ante nos, la parte querellada no actuó de forma contraria a la ley.[3]

Como resultado, el DACo desestimó la querella incoada por las partes Recurrentes. A raíz de ello, la parte recurrente presentó moción en solicitud de reconsideración y esta fue denegada por el DACo. Inconforme, las partes Recurrentes comparecen, y señalan los siguientes errores:

> Erró en Derecho la Honorable Juez Administrativo Auger Pinzón al declarar No Ha Lugar y ordenar el cierre y archivo de la querella por la apoderada/mandataria Ivette M. Pérez Reilova, a nombre de su señora madre Ivia M. Reilova Cobos, sosteniendo la validez del artículo 51 de la Ley de Condominios de Puerto Rico, a los efectos de que "[E]l apoderado de un titular solo está autorizado a votar a su nombre de su poderdante, mas, no a hacer expresiones o hacer proposiciones, a nombre de este". Ello es violatorio del derecho a la libertad de expresión de la poderdante/titular Ivia M. Reiolva Cobos, consagrado en la Constitución de Puerto Rico y la de los Estados Unidos.
>
> El hecho de que lo resuelto por la Juez Administrativo Auger Pinzón tenga por fundamento una ley estatal, (el artículo 51 de la Ley de Condominios de Puerto Rico), es lo que define dicha actuación como "state action"; actuación proscrita por

---

[2] Apéndice del Recurso, a las págs. 91-100.
[3] *Íd.*

la quinta y decimocuarta enmienda de la Constitución de los Estados Unidos[.]

Erró la Juez Administrativo Auger Pinzón al no analizar la Ley de Condominios de Puerto Rico (Núm. 129-2020), de forma general, y reconocer que la intención legislativa, a partir del artículo 49, fue hacer una distinción en dicha Ley, de las facultades que se le otorgan al Apoderado Titular o el Representante de Titular Corporativo, que acredite mandato expreso al titular, por virtud de Escritura de Poder, conforme establece la ley, inscrito en el Registro de Poderes y Testamentos, o por virtud de una Resolución Corporativa, quienes además de poder representar al titular natural o titular jurídico, podrán ser electos para ocupar el cargo de Vocal en la Junta de Directores del condominio.

Con el beneficio de la posición de las partes, resolvemos.

### -II-

### -A-

En Puerto Rico, el disfrute del derecho a la libertad de expresión está protegido por las constituciones del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de Norteamérica. En lo pertinente, el Artículo II de la constitución local dispone que, "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica[.] Las personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Secs. 4 y 6, Const. ELA, LPRA, Tomo 1. La Enmienda I de la Constitución Federal establece: "[c]ongress shall make no law... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble[.]". Emda. I, Const. EE. UU., LPRA, Tomo 1. El Estado no puede coartar o restringir de manera arbitraria la capacidad de un ser humano para expresarse con libertad. *Coss y U.P.R. v. C.E.E.,* 137 DPR 877, 886 (1995); *Pacheco Fraticelli v. Cintrón Antosanti,* 122 DPR 229 (1988); *Police Dep't. of Chicago v. Mosley,* 408 U.S. 92, 95-96 (1972).

### -B-

Las garantías constitucionales protegen a las personas frente al Estado. *González Aristud v. Hospital Pavía,* 168 DPR 127, 135

(2006). Para plantear judicialmente una violación a un derecho constitucional es necesario una actuación del Estado. Las actuaciones puramente privadas, salvo contadas excepciones, no pueden servir de fundamento a una alegación de violación a un derecho constitucional. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C., Abo, PR, 1988, Vol. II, pág. 799; *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989); *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988).

La doctrina de acción estatal persigue proteger a los individuos frente a actos de personas o entes privados que afectan sus derechos constitucionales. *González Aristud v. Hosp. Pavía, supra*, pág. 135; Véase, R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, pág. 799. El Tribunal Supremo de Puerto Rico adoptó en *Pueblo v. Rosario Igartúa,* 129 DPR 1055, 1072-1073 (1992), los criterios utilizados por el Tribunal Supremo Federal para evaluar, si la actuación de una persona particular constituye una acción estatal. Los criterios adoptados son los siguientes:

> Primero, la privación tiene que ser causada por el ejercicio de algún derecho o privilegio creado por el Estado o por una regla de conducta impuesta por el Estado o por una persona de quien el Estado es responsable[.] Segundo, la parte a quien se le imputa la privación tiene que ser una persona de quien razonablemente se puede decir que es un actor del Estado. Esto puede ser porque es un oficial del Estado, porque ha actuado en conjunto o ha obtenido asistencia significativa de oficiales del Estado o porque su conducta es de otra forma atribuible al Estado.
>
> *Pueblo v. Rosario Igartúa, supra*, pág. 1071.

Los siguientes criterios fueron desarrollados en la esfera federal con el propósito de identificar una acción estatal:

> 1) El acto es una función pública que no se puede delegar sin las salvaguardas constitucionales. (función pública),[4]

---

[4] Solo las actividades tradicionalmente reservadas al estado o asociadas a su soberanía constituirán función pública. J.J. Álvarez González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos*, Temis, pág. 1257.

2) Porque el Estado ha colaborado o propiciado la activación del ente privado que debe considerarse un apéndice del Estado y obligarse a respetar las limitaciones que protegen a las personas frente al estado. (interrelación entre el estado y el actor privado) o,

3) Una combinación de las anteriores.

El requisito de función pública consiste en una actividad que el Estado no puede válidamente delegar a entes privados libre de restricciones constitucionales. Por otro lado, solo se satisface el segundo criterio cuando se demuestra suficiente grado de relación ("nexo") entre el individuo o ente privado y el estado. J.J. Álvarez González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos*, Temis, pág. 1257-1258. El segundo requisito también es conocido como la doctrina del nexo o interrelación. Queda establecida cuando existe suficiente relación entre el Estado, y la persona como para considerar la actuación privada como una pública. Algunos ejemplos son: el otorgamiento de licencias a la empresa privada, y su reglamentación por el Estado; las empresas con el Estado; las ayudas y subsidios por el Estado a la empresa privada; uso de facilidades públicas por la empresa privada. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, 4ta ed., NC, 2013, Vol. II, pág. 809.

Estos criterios se entrelazan con los hechos particulares del caso para determinar si hay o no acción estatal sin que hasta el momento se haya desarrollado una fórmula precisa. Lo que requiera la determinación, caso a caso. *Íd.*; *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 US 288, 295 (2001).

La aplicación cuidadosa de los requisitos de la acción estatal busca preservar el área de las libertades individuales, inclusive en situaciones entre ciudadanos particulares. Además, persigue no penalizar a los gobiernos estatales, sus agencias o agentes por conductas de individuos o entes privados de las cuales los primeros no son responsables. *Lugar v. Edmondson Oil Co.,* 457 US 922, 936

(1982); *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, supra*, pág. 295; *National Collegiate Atheletic Ass'n v. Tarkanian, supra*, pág. 191. Como dijimos, la disyuntiva sobre si existe acción estatal está necesariamente atada a los hechos, y a las circunstancias particulares de cada caso. *Ponce v. Basketball Federation of Com. of Puerto Rico*, 760 F.2d 375, 377 (1985); *Lugar v. Edmondson Oil Co., supra*, pág. 102; *Burton v. Wilmington Parking Authority*, 365 US 715, 722 (1961).

### -*C*-

La Ley Núm. 129 de 16 de agosto de 2020, también conocida como la "Ley de Condominios de Puerto Rico, según enmendada, 31 LPRA sec. 1921, fue promulgada con el propósito de establecer un régimen jurídico que facilite la vida en convivencia dentro de un área restringida de viviendas. *Exposición de Motivos*, Ley Núm. 129-2020. Como parte del funcionamiento ordenado que debe permear en el régimen de propiedad horizontal, es menester señalar que el titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA 1921a.

Ahora bien, el artículo 48 de la precitada ley, destaca la finalidad del Consejo de Titulares:

> El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.
>
> El Consejo de Titulares tendrá personalidad jurídica propia y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento. [...]
>
> 31 LPRA sec. 1922t.

El Tribunal Supremo de Puerto Rico ha destacado que "[l]a responsabilidad fundamental de la Junta de Directores estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares". M.J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio*, 64 (Núm. 3) Rev. Jur. UPR 481, 481 (1995). *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 418 (2012).

El Consejo de Titulares está definido como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921h. Es decir, el Consejo de Titulares está integrado por todos los titulares y constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal. Este goza de personalidad jurídica y por medio de su existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares. A tenor con lo anterior, la finalidad del Consejo de Titulares consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros; es decir, el de los titulares frente a la comunidad y a terceros. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311,326 (2012).

En relación al voto o representación, la Ley de Condominios en su Art. 51 establece lo siguiente:

> **La asistencia a las asambleas del Consejo de Titulares será personal o por representación legal o voluntaria, bastando para acreditar esta última un escrito firmado por el titular. El poder tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, excepto que se trate**

> **de un poder general otorgado ante notario e inscrito en el Registro de Poderes y Testamentos.**
>
> . . .
>
> Ninguna de las personas autorizadas a representar a un titular podrá ejercer el derecho al voto en representación de más de un titular. En caso de matrimonios, que a su vez, al menos uno (1) de ellos es titular, solo podrán representar a un titular adicional. Ninguna persona que comparece a asamblea representando a un titular, podrá ejercitar el derecho al voto por delegación en representación de más de un titular. Los poderes de representación estarán disponibles antes durante y después de la asamblea para la revisión de cualquier titular que así lo solicite. El poder para representar a un titular da derecho al voto mas no a hacer expresiones o hacer proposiciones. Cada titular tendrá derecho a un voto independientemente del número de apartamentos de que es propietario, para efectos del cómputo de mayoría numérica de titulares, y/o derecho al voto con arreglo al porcentaje correspondiente a su apartamento para efectos del cómputo de mayoría de porcentajes, dependiendo de la definición del concepto de mayoría que rija para el inmueble. 31 LPRA § 1922w (Énfasis Nuestro).
>
> . . .

De esta forma, la Ley de Condominios concede la facultad a los titulares de otorgar poderes a favor de ciertas personas para su representación en las Asambleas Ordinarias, mediante documentos llamados "Proxies". M. J. Godreau, *El Condominio, El Régimen de Propiedad Horizontal de Puerto Rico*, 2da ed. p. 226 (2019). De igual forma, para garantizar que las decisiones las tomen personas que de alguna forma estén vinculadas al condominio o relacionadas con el titular que no puede asistir a la asamblea, la Ley de Condominios establece que el "proxy" sólo lo podrán tener las siguientes personas: a. otro titular del condominio; b. un familiar del titular, hasta el segundo grado de consanguinidad; c. el cónyuge del titular; d. arrendatarios que residan en el condominio; e. el abogado del titular; y, f. el apoderado del dueño que muestre poder otorgado ante notario. *Íd.*

En lo pertinente al caso de marras, referente al "Proxy para Asamblea Extraordinaria" del Condominio Jardines de Cuenca establece que este "tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, **excepto que se trate de un poder general otorgado ante notario e inscrito en el Registro de Poderes y Testamentos**".[5]

---

[5] Apéndice del Recurso, a la pág. 29.

Esta dispone que **el apoderado de un titular o el Representante de Titular Corporativo que acredite mandato expreso de éste, por virtud de escritura de poder, conforme establece la ley, e inscrito en el Registro de Poderes y Testamentos, podrá ser electo para ocupar el cargo de Vocal.** 31 LPRA § 1922u (Énfasis Nuestro). Asimismo, las funciones del Vocal las establecerá el Consejo de Titulares en su reglamento. *Íd.*

### -D-

La figura del poder duradero se incorporó a nuestro ordenamiento jurídico mediante enmienda al Código Civil de 1930, por la Ley 25 de 18 de enero de 2012. La *Exposición de Motivos* de dicha ley dispone que esta figura sería de gran utilidad cuando se hace difícil determinar claramente cuando una persona comienza a perder sus facultades mentales en procesos como los de la enfermedad del Alzheimer y de demencia senil donde ya no pueden administrar sus bienes. A estos fines, una persona en estado lúcido podrá otorgar un poder (mandato) a la persona de su entera confianza y el mismo podrá ser legalmente efectivo y válido durante todo el progreso de su enfermedad incapacitante. Ley Núm. 25 de 2012.

El Artículo 1600A del Código Civil de 1930 definía lo que era el Poder Duradero. En específico, lo definió de la siguiente manera:

> Se conocerá como Poder Duradero aquel mandato hecho mediante escritura pública para la administración de sus bienes y para cualquier otro asunto, que contenga en forma expresa una disposición donde se establezca que el mismo será efectivo y válido, aun después de que el otorgante sobrevenga una incapacidad o sea declarado incapaz judicialmente. *Íd.*

Por otro lado, en nuestro ordenamiento jurídico se regula la figura del mandato mediante el Art. 1401 del Código Civil de Puerto Rico. Este establece que "por el contrato de mandato, el mandatario se obliga a realizar uno o más actos jurídicos en interés del mandante". 31 LPRA § 10361. Además, el mandato puede ser

otorgado con poder duradero. Así, pues, el mandato con poder duradero es otorgado en instrumento público y debe expresamente establecer que este continúa surtiendo efectos después de sobrevenida la incapacidad del poderdante esté o no declarada judicialmente. *Íd.*, § 10362. En cuanto a las facultades del poderdante, el Art. 1402 dispone:

> Cuando en el poder duradero se permite al apoderado enajenar bienes inmuebles del poderdante, el instrumento público tiene que contener la descripción de los bienes que se le autoriza a enajenar y especificar aquel bien del poderdante que constituye su residencia principal. Excepto cuando el poder dispone algo distinto, el apoderado no está autorizado a realizar actos respecto a bienes inmuebles que el poderdante adquiera después de otorgar el poder. El apoderado no puede enajenar o gravar el bien inmueble del poderdante que constituye su residencia principal, ni su equipo o mobiliario, salvo con autorización judicial previa. *Íd.*

### *-E-*

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia sobre las leyes y reglamentos que cada una administra. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. JP y AAA*, 142 DPR 656, 672-673 (1997).

Por lo que, en virtud de nuestro ejercicio de revisión judicial, debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021). Los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe.,* 152 DPR 116, 122 (2000). Esto significa que, el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que, impida la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR,* 196 DPR 606, 628 (2016), el Tribunal Supremo de Puerto Rico se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Por ende, como norma general, el tribunal revisor debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello.

Es pertinente enfatizar que, la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, pág. 819; *Torres Rivera v. Policía de PR*, *supra*, pág. 628.

### *-III-*

En el Recurso ante nuestra consideración, las partes Recurrentes esbozaron tres (3) señalamientos de error que juzgan cometió el DACo. En síntesis, sostuvieron que erró el DACo al ordenar el cierre y archivo de la querella presentada sosteniendo la validez del Art. 51 de la *Ley de Condominios de Puerto Rico*. Además, adujeron que lo resuelto por el Juez Administrativo tenía por fundamento una ley estatal basada en la actuación proscrita por la quinta y decimocuarta enmienda de la Constitución de los Estados Unidos y, por tanto, trataba de un "state action". Asimismo, insistieron en que el Juez Administrador erró al no analizar la citada Ley de forma integral y no reconocer la intención legislativa a partir del Art. 49.

Precisa destacar que, en el presente Recurso, las partes no disputan las determinaciones de hechos contenidas en la *Resolución* recurrida. Por tanto, la controversia queda reducida a una cuestión estricta de derecho. Así, pues, procedemos a discutir, en primera instancia, el *segundo* señalamiento de error. En el precitado error, las partes Recurrentes sostuvieron que el hecho de que la Juez Administrativo tenga por fundamento en su decisión una Ley estatal, Art. 51 de la *Ley de Condominios*, es lo que define la actuación como un "state action". Asimismo, aseguran que, la prohibición contenida en el reglamento de debate del condominio

constituye una acción gubernamental al estar amparada en la *Ley de Condominios*.

Como es sabido, la aplicación de la doctrina de actuación gubernamental o actuación estatal ("state action") a una situación particular de hechos requiere de la existencia de dos componentes. El primero, un impedimento a un particular de ejercer un derecho fundamental por la aplicación de una regla, reglamento o estatuto creado por el Estado. *Lugar v. Edmondson Oil Co., supra,* pág. 937. En segundo lugar, el causante del impedimento puede razonablemente considerase un actor del Estado. *Íd.*

Justipreciamos que las partes Recurrentes satisficieron el primer requerimiento al alegar la privación del derecho a su libertad de expresión por la aplicación del Art. 51 de la Ley de Condominios. *Íd.*, pág. 941; *Estades–Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 n. 10 (1st Cir. 2005). Empero, la existencia del primer requisito, por sí solo, no satisface la doctrina de la actuación gubernamental, pues es necesario también evidenciar el segundo componente. *Lugar v. Edmondson Oil Co., supra*, pág. 937.

El segundo componente está sujeto a satisfacer tres exigencias: (1) función pública; (2) interrelación entre el estado y el actor privado; y (3) el grado de dominio del Estado sobre las actuaciones del actor ("state compulsión test"). *Pueblo v. Rosario Igartúa, supra*, pág. 1071; Véase, *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n., supra*, pág. 296. Destacamos que el primer criterio no existe en el presente caso, la administración de un condominio corresponde a sus condóminos, en particular a la junta de directores. El administrar un condominio de particulares nunca ha sido caracterizado como una función pública. *Blum v. Yaretsky*, 457 US 991, 1005 (1982).

La segunda característica refiere al vínculo entre el gobierno y el particular en la producción de la actuación cuestionada. Aplica

cuando la persona privada actúa como agente del Estado por mandato de ley. *Lugar v. Edmondson Oil Co., supra,* pág. 941; *Adickes v. S.H. Kress & Co., supra,* pág. 152. No es suficiente el que el Estado regule extensamente los condominios en Puerto Rico para convertir la actuación de la Junta de Directores del Condominio Jardines de Cuenca en una actuación del Estado. *Jackson v. Metropolitan Edison Co., supra,* pág. 350. Tampoco queda satisfecho el requisito por el mero hecho de la Junta de Directores del Condominio la Cuenca haber invocado el Art. 51 de la Ley de Condominios. *Estades-Negroni v. CPC Hosp. San Juan Capestrano,* 412 F.3d 1, 6 (2005); *Spencer v. Lee,* 864 F.2d 1376, 1381 (7th Cir.1989).

De ordinario, según la casuística federal, el segundo requerimiento ha quedado satisfecho cuando el actor privado es dirigido por alguna agencia del estado, cuando el Estado delegó en este una función inherentemente pública o gubernamental, o cuando la función del ente privado está tan entremezclada con la función gubernamental que, resulta imposible distinguir uno del otro. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, supra,* pág. 296; *Pennsylvania v. Board of Directors of City Trusts of Philadelphia, supra,* pág. 231; *West v. Atkins, supra,* pág. 56; *Edmonson v. Leesville Concrete Co., supra,* págs. 627–628; *Evans v. Newton, supra,* págs. 299 y 301. Esto último, particularmente cuando el gobierno participa activamente en la administración del ente. *Íd.* Las partes Recurrentes tenían la obligación de demostrar un nexo o unión fuerte entre el Estado, o el impulso del Estado detrás de la actuación cuestionada de tal forma que, el DACo pudiera razonablemente atribuir la actuación al gobierno local. *Blum v. Yaretsky, supra,* pág. 1004. Por todo lo anterior, no se cometió el *segundo* error.

En atención a los señalamientos de error *primero* y *tercero,* estos se discutirán conjuntamente por estar intrínsecamente relacionados. Precisa señalar que, no obstante, las partes Recurrentes, no probaron todos los requisitos del "state action", les asiste la razón en su derecho a expresarse en la Asamblea Extraordinaria celebrada conforme al Art. 49 de la *Ley de Condominios.* En este caso, la señora Pérez Reilova ostentaba un poder otorgado mediante Escritura Núm. 94 de *Poder General y Duradero,* el día 26 de junio de 2019, ante el Notario Daniel Enrique Matos Meléndez. Mediante referido poder, la señora Reilova Cobos designó a la señora Pérez Reilova como apoderada para realizar todo trámite relacionado a sus propiedades. Entre las propiedades designadas, se encontraba el apartamento residencial 801-2B ubicado en el Condominio Jardines de Cuenca. Según expuesto, el Código Civil dispone que se puede otorgar un mandato como poder duradero. Así, pues, el mandato con poder duradero es otorgado en escritura pública y debe expresamente establecer que este continúa surtiendo efectos después de sobrevenida la incapacidad del poderdante esté o no declarada judicialmente. *Íd.* Concluimos que, en este caso, el *Poder General y Duradero* otorgado es válido, pues cumple con todas las regulaciones y consta inscrito en el Registro de Poderes, bajo el Núm. 1650-74 folio 74, tomo 1650.[6]

De otro lado, la Ley de Condominios concede la facultad a los titulares de otorgar poderes a favor de ciertas personas para su representación en las Asambleas Ordinarias, mediante documentos llamados "Proxies". M. J. Godreau, *El Condominio, El Régimen de Propiedad Horizontal de Puerto Rico*, 2da ed. p. 226 (2019). Un proxy es un poder que se otorga a una parte para que pueda representar al titular en una Asamblea en fechas designadas. Precisa señalar

---

[6] Apéndice del Recurso, a la pág. 27.

que en el presente caso nos encontramos frente a un poder vinculante contemplado en una de nuestras fuentes primarias, el Código Civil. Además, enfatizamos que el poder duradero extiende jurisdicción a la parte que lo ostenta de representar al poderdante para todos los efectos. Igualmente, en este caso, dicho poder extendía expresamente las facultades de ceder, alquilar, disponer, con o sin justa causa, pactar acuerdos, votar en asambleas, reuniones o eventos, entre otras del apartamento. De igual forma, no podemos equiparar la naturaleza de un poder duradero con la de un proxy. Así, pues, entender que un poder duradero no otorga las mismas facultades del poderdante al apoderado para ejercer los derechos establecidos por la Ley de Condominios en las Asambleas, constituiría un fracaso a la justicia.

Por otra parte, en atención al señalamiento de las partes sobre el Art. 51, este establece lo siguiente:

> La asistencia a las asambleas del Consejo de Titulares será personal o por representación legal o voluntaria, bastando para acreditar esta última un escrito firmado por el titular. El poder tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, **excepto que se trate de un poder general otorgado ante notario e inscrito en el Registro de Poderes y Testamentos.** 31 LPRA § 1922w (Énfasis nuestro).

Asimismo, el referido artículo dispone que la persona que ostente el poder para participar de las Asambleas, estará facultado a otorgar el derecho al voto más no a hacer expresiones. *Íd.* Por lo que, se les limita las facultades a únicamente emitir votos a las partes que ostenten de un proxy. Del mismo texto de la Ley, se desprende que hay una excepción y esta opera cuando hay un poder general otorgado ante notario e inscrito en el Registro de Poderes. Además, surge del expediente que el documento utilizado para otorgar el Proxy por el Condominio Jardines de Cuenca, también señala como excepción las personas que ostenten de un poder

general otorgado ante Notario.[7] En lo pertinente, el "Proxy para Asamblea Extraordinaria" del Condominio objeto de esta controversia establece que este "tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, **excepto que se trate de un poder general otorgado ante notario e inscrito en el Registro de Poderes y Testamentos**".[8]

De esta forma, en casos donde el apoderado de un titular ostente un poder inscrito en el Registro de Poderes, le será de aplicación el Art. 49 de la *Ley de Condominios de Puerto Rico*. Este dispone que **el apoderado de un titular o el Representante de Titular Corporativo que acredite mandato expreso de éste, por virtud de escritura de poder, conforme establece la ley, e inscrito en el Registro de Poderes y Testamentos, podrá ser electo para ocupar el cargo de Vocal.** 31 LPRA § 1922u (Énfasis nuestro). Por tal razón, al analizar de forma integral la *Ley de Condominios de Puerto Rico*, concluimos que la parte Recurrente no se encuentra impedida de expresarse en las Asambleas del Condominio.

Del análisis integral de las disposiciones en controversia, notamos que el propio estatuto le confiere un trato especial y distinto al poder otorgado ante notario. Y es que no puede ser otra la interpretación, pues equiparar los efectos de un proxy a los de un poder duradero que cumple con todas las formalidades de ley, sería vulnerar la verdadera intención del legislador al incorporar a nuestro acervo legal dicha figura con las repercusiones trascendentales de las que está investido. Acoger la interpretación otorgada por el DACo en el presente caso equivaldría a validar el absurdo de que una persona con un poder duradero está vedada de efectuar expresión alguna durante una asamblea de un condominio

---

[7] Apéndice del Recurso, a la pág. 29.
[8] *Íd.*

sometido al régimen de propiedad horizontal, pero ese mismo apoderado con ese mismo poder puede comparecer ante los tribunales de justicia, si así lo detalla dicho documento público. Estamos convencidos de que ese no fue el fin ulterior que el legislador quiso imprimirle a dicha disposición en la Ley de Condominios.

Así, pues, debido a la naturaleza del poder otorgado, la señora Pérez Reilova, en representación de la señora Reilova Cobos, además de votar y expresarse, de así requerirlo, podrá solicitar ocupar el cargo de vocal conforme a lo dispuesto en el Art. 49 de la Ley 129-2020. 31 LPRA § 1922u. Por los fundamentos antes expuestos, colegimos que la limitación a expresarse no le es aplicable a las partes aquí Recurrentes. Por todo lo anterior, se cometió los señalamientos de error *primero* y *tercero*.

En consecuencia, y debido a los efectos jurídicos que tiene nuestra conclusión, se hace innecesario adjudicar los méritos del restante de los señalamientos de error.

### *-IV-*

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *revocamos* la resolución recurrida. Ordenamos al Condominio Jardines de Cuenca a dejar sin efecto la Asamblea Extraordinaria celebrada el día 22 de noviembre de 2022 y a convocar una nueva.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones